**780**

**CITY OF INDEPENDENCE, MISSOURI, Plaintiff,**

v.

**Christopher S. BOND, Governor of the State of Missouri, Bill Waris, County Executive of Jackson County, Missouri and Jackson County, Missouri, Defendants.**

No. 83–0911–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Feb. 24, 1984.

Charles P. Dribben, City Counselor, William B. Moore, Assoc. City Counselor, Independence, Mo., for plaintiff.

John Ashcroft, Atty. Gen., Paul M. Spinden, Asst. Atty. Gen., Jefferson City, Mo., Jay D. Haden, Legal Counsel, Kansas City, Mo., for defendants.

MEMORANDUM OPINION AND ORDER DISMISSING ACTION

JOHN W. OLIVER, Senior District Judge.

I.

The complaint filed by the City of Independence alleged that "this action is brought under the Declaratory Judgments Act, 28 U.S.C. Secs. 2201 and 2202." That complaint, which alleged no other ground for invoking the limited jurisdiction of this Court, prayed for a declaratory judgment that the appointments to the Private Industry Council of Service Delivery Area 12 made by the Mayor pro tempore and the City Council of the City of Independence "were proper and in compliance with Sec. 102 of the Job Training Partnership Act"; for a declaratory judgment that "the defendant Christopher S. Bond does not have authority to make appointments to the Private Industry Council"; and for a declaratory judgment that the appointees allegedly made by the Mayor pro tempore and the City Council of the City of Independence be certified by the defendant Christopher S. Bond.

In apparent recognition that the Declaratory Judgment Act does not confer independent jurisdiction on this Court, the complaint also alleged that "this action arises under the Act of October 13, 1983 [1982], Public Law 97–300, 96 Stat. 1322, *et seq.*, cited as the Job Training Partnership Act."

II.

The Court convened a pretrial conference in the above case on November 14, 1983.

Defendants Bill Waris, County Executive, and Jackson County, Missouri filed a motion on the day of the conference which prayed that those two defendants be realigned as plaintiffs in the action. Those two defendants also filed an application for a temporary restraining order on the day of the conference which sought to restrain the Governor from convening a meeting of the Private Industry Council for Service Delivery Area 12.

This Court refused to grant the application for a temporary restraining order and deferred ruling on the motion for realignment of parties until after it obtained the views of counsel in regard to the question of whether this Court had jurisdiction over the action as filed. This Court's Memorandum and Order of November 15, 1983 reflects that the jurisdictional questions presented were fully discussed at the November 14, 1983 pretrial conference and that the following Order was entered that day:

ORDERED that on or before November 25, 1983, each of the parties shall prepare, serve and file briefs on:

(A) the obvious jurisdictional question presented;

(B) whether the question presented is a political question outside this Court's jurisdiction under *Luther v. Bordon, [Borden]* 48 U.S. (7 How.) 1 [12 L.Ed. 581] (1849) and the progeny of that case; and

(C) whether the discretion to exercise whatever jurisdiction the Court may have under the Declaratory Judgment Act should or should not be exercised under the circumstances.

On November 21, 1983, three days before the jurisdictional briefs were to be filed, all of the parties filed a joint application for an extension of time to December 15, 1983 to file the jurisdictional briefs required by this Court's November 15, 1983 Order. That joint application alleged that following the November 14, 1983 conference, "counsel for the various parties have discussed the possibility and methods of settling the issues presented in this litigation"; that

"substantial movement has been made toward settlement, but that this movement has taken substantial time by the parties and their counsel." The Court granted an extension to December 15, 1983.

On December 14, 1983 a second joint application for extension of time was filed by all the parties, requesting that the time for filing the jurisdictional briefs be extended to January 15, 1984. That joint application alleged that "the parties are continuing to negotiate for a settlement of this matter and substantial movement and progress has been made toward this end." The Court granted that joint application.

On January 17, 1984, however, plaintiff, the City of Independence, moved that the time for filing the jurisdictional briefs be further extended until January 30, 1984, representing that "the City of Independence is reviewing the entire status of this litigation and may be satisfied that the issues no longer exist." Because that application also recited that no other party had any objection, the time for filing the jurisdictional briefs was extended to January 30, 1984. On January 30, 1984 the City of Independence requested still a further extension until February 6, 1984, reciting that no other party had any objection. The Court granted that extension.

The City of Independence and the Governor both filed briefs in accordance with this Court's November 15, 1983 Order, as extended, shortly after the February 6, 1984 extended deadline. Defendant Waris and defendant Jackson County, Missouri, however, have failed to comply with that Order.

We have carefully considered the jurisdictional briefs filed by the City of Independence and by the Governor. We have also conducted independent research in regard to the questions presented. We conclude that the above case must be dismissed, without prejudice, for want of jurisdiction for reasons we now state.

### III.

The City of Independence's jurisdictional brief directed attention at its outset to the allegation in the complaint for declaratory judgment which, as we above noted, al-

leged that "this action arises under the act of October 13, 1982, Public Law 97–300, 96 Stat. 1322, *et seq.* cited as the Job Training Partnership Act." The City relied primarily on the Eighth Circuit's opinion in *Div. 1287, Etc. v. Kansas City Area Transp. Auth.*, 582 F.2d 444 (8th Cir.1978), in which the Court of Appeals affirmed this Court's conclusion that federal question jurisdiction was vested in a federal district court under the Urban Mass Transportation Act, 49 U.S.C. § 1609(c).

That Act provided that a state or local government must make appropriate arrangements to preserve transit workers' existing collective-bargaining act rights before a state or local government would be entitled to receive federal funds for the acquisition of a privately owned transit company. This Court held, and the Court of Appeals affirmed, that it had federal question jurisdiction to hear and determine an action brought by a union in federal court for an alleged violation of an arrangement authorized by the Act and for an alleged violation of a collective-bargaining agreement between the union and the Kansas City Area Transportation Authority. The City of Independence, for reasons that are not readily apparent, also cited and relied on *Local Div. 732, Etc. v. Metropolitan Atlanta, Etc.*, 667 F.2d 1327 (11th Cir. 1982) which concluded, directly contrary to the Eighth Circuit, that a federal district court did not have federal question jurisdiction under the Urban Mass Transportation Act.

The Governor's brief, appropriately cited and relied upon the Supreme Court's unanimous opinion in *Jackson Transit Authority v. Transit Union*, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982). That case expressly disapproved the Eighth Circuit opinion in the *Kansas City ATA* case and adopted the rationale of the Eleventh Circuit opinion in the *Metropolitan ATA* case. The Supreme Court in *Jackson Transit Authority* concluded that a federal district court lacked federal question jurisdiction because the claims asserted could not be said "to arise under federal law." This Court must, of course, apply the rationale of the Supreme Court's opinion in *Jackson Transit Authority* which expressly disapproved the Eighth Circuit opinion relied upon by the City of Independence.

## IV.

The Job Training Partnership Act, which took effect October 1, 1983, replaced the former Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801–992. The Congress, in the first section of the Job Training Partnership Act of 1983, declared in 29 U.S.C. § 1501 that the purpose of the new legislation was as follows:

It is the purpose of this chapter to establish programs to prepare youth and unskilled adults for entry into the labor force and to afford job training to those economically disadvantaged individuals and other individuals facing serious barriers to employment, who are in special need of such training to obtain productive employment.

The Congressional declaration of purpose contained in the first section of the Comprehensive Employment and Training Act of 1973 (CETA), passed by the Congress ten years earlier, was stated in 29 U.S.C. § 801 in but slightly different language. That section stated that:

It is the purpose of this chapter to provide job training and employment opportunities for economically disadvantaged, unemployed, and underemployed persons, and to assure that training and other services lead to maximum employment opportunities and enhance self-sufficiency by establishing a flexible and decentralized system of Federal, State, and local programs.

The 1983 Act, of course, reflected a radical change of Congressional view in regard to how substantially the same purpose declared in both the 1973 Act and the new 1983 Act was to be accomplished. Senate Report No. 469, 97th Cong., 2d Sess. 2, published in connection with the Job Training Partnership Act, 1982 U.S.Code Cong. & Ad.News, 2636–37, makes clear that one of the reasons why the Congress believed that CETA should be replaced was because the earlier legislation contained "no requirement for the involvement of the private sector."

The Senate Report stated that "the first principle the bill is designed to address is the active involvement of private industry," an objective to be "accomplished" through the Private Industry Councils. The Senate Report added that "the new legislation will recognize the role of the state in all local programs and the extensive involvement of the federal government." *Id.* at 2637.

The Senate Report stated "[i]n short, the basic supervisory role previously performed by the federal government will now be turned over to the state." It declared "This is an important step and consistent with government-wide emphasis on deregulation which is so critical to true local decision-making and more effective program management." *Id.* at 2638, 2639.

The Senate Report further stated that "[t]he core of the Training For Jobs Program is its reliance on local decision-making by the Private Industry Council and the development of an effective private-public partnership to plan and administer job training programs," adding that "[u]nder the bill, the basic supervisory role is given to the Governor, acting with the advice of the State Job Training Council." *Id.* at 2659.

### V.

The validity of Congress' assumption that State and local government decision-making processes would perform more effectively and efficiently than the federal government's administration of CETA is not very firmly established by the circumstances of this case. The pleadings and documentary evidence before the Court establish that the State and local governments have experienced a great deal of difficulty in even getting the new program underway. For it is clear that the director of the Missouri Department of Social Services, Division of Manpower Planning, acting on behalf of the Governor, advised the elected Mayor of Independence and Jackson County Executive Waris on July 18, 1983 that the nomination documents submitted to the Governor did not comply with the Consortium Agreement entered into by Jackson County and the City of Independence.

The quarrel, of course, revolved around the submission of the City of Independence nominees by persons other than the elected Mayor of the City of Independence, as provided in paragraph 2(b) of the May 20, 1983 agreement executed by Jackson County, Missouri and the City of Independence, Missouri. The quarrel between the State and local governments has effectively delayed the implementation legislation recently passed for the Congressionally declared purpose of establishing "programs to prepare youths and unskilled adults for the entry into the labor force and to afford job training to those economically disadvantaged individuals and other individuals facing serious barriers to employment, who are in special need of such training to obtain productive employment." 29 U.S.C. § 1501.

The victims of the quarrel are the youths, the unskilled adults, the economically disadvantaged, and the other individuals who live in the City of Independence and in Jackson County, Missouri who face serious barriers to employment, all of whom, as the Congress recognized when it passed the Job Training Partnership Act of 1983, are in special need of training in order to be able to obtain productive employment.

Regardless of what or who may have produced the quarrel between the parties, under principles stated by the Supreme Court in *Jackson Transit Authority,* the "precise question" presented to this Court is whether the contract actions alleged by both the City of Independence, Missouri, and as implicitly asserted by defendant Waris and defendant Jackson County, Missouri, are "federal causes of action"; the question presented is "not whether the [parties] can bring suit at all to enforce the contracts." *Jackson Transit Authority* made clear that the issue "is not whether Congress intended the union to be able to bring contract actions for breaches of the two contracts, but whether Congress intended such contract actions to set forth federal, rather than state, claims." 457 U.S. at 21, 102 S.Ct. at 2206.

The Supreme Court, of course, held in *Jackson Transit Authority* that it could not read a provision into the Urban Mass Transportation Act which would create a federal cause of action for breaches of agreements and collective-bargaining contracts executed between the recipients of federal funds and the transit unions. Nor can this Court, consistent with the rationale of *Jackson Transit Authority,* read such a provision in the Job Training Partnership Act of 1983. The parties, of course, have not cited any provision of the Act, nor has this Court been able to discover any provision of the Act, that could in any way be said to create a federal cause of action or to vest federal question jurisdiction in this Court over the claims asserted in this case. We therefore conclude that for purposes of federal question jurisdiction, the complaint of the City of Independence fails to allege a claim within the limited jurisdiction of this Court.

## VI.

We need not reach the two other substantial questions which we requested the parties to brief in our November 15, 1983 Order for the reason that we are satisfied that this Court does not have subject matter jurisdiction over the complaint filed by the City of Independence.

We cannot refrain from expressing the hope that the parties will resume the negotiations for settlement which they represented were going forward during the entire time they sought extensions of time for the filing of their jurisdictional briefs. We, of course, hope that those renewed negotiations will prove to be successful.

This Court is satisfied that renewed negotiations for settlement will be successful if all parties conduct those renewed negotiations in recognition that the public interest requires that all barriers to the implementation of the Job Training Partnership Act of 1983 should be removed without further delay.

For the reasons stated, it is

ORDERED (1) that the City of Independence's complaint for declaratory judgment should be and the same is hereby dismissed, without prejudice, for want of subject matter jurisdiction. It is further

ORDERED (2) that the November 14, 1983 motion for realignment of parties filed by defendant County Executive Waris and by defendant Jackson County, Missouri, should be and is hereby denied as moot in light of this Court's order dismissing the above action without prejudice. It is further

ORDERED (3) that the City of Independence's February 23, 1983 application for an extension of time to file a reply brief in response to defendant Bond's jurisdictional brief, which was not filed until after the above memorandum opinion was prepared in the final draft, should be and the same is hereby denied for the reasons that (a) this Court's November 15, 1983 Order did not provide for the filing of any reply briefs, and (b) that this Court is satisfied from its independent research that the rationale of the Supreme Court decision in *Jackson Transit Authority* is controlling.