756 F.2d 615
 CITY OF INDEPENDENCE, MISSOURI, Appellant,
v.
Christopher S. BOND, Governor of the State of Missouri, Bill
Waris, County Executive of Jackson County,
Missouri, Jackson County, Missouri, Appellees.
 No. 84-1581.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1984.
Decided Feb. 26, 1985.
 
 George Kapke, Independence, Mo., for appellant.
 Paul M. Spinden, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before BRIGHT and McMILLIAN, Circuit Judges, and MAGNUSON, District Judge.*
 BRIGHT, Circuit Judge.
 
 
 1
 The City of Independence brought this action against Christopher S. Bond, the Governor of Missouri William Waris, County Executive of Jackson County, Missouri, and Jackson County, Missouri,[1] seeking a declaratory judgment that appointments to the Private Industry Council for eastern Jackson County made by the Mayor pro tempore and the City Council of the City of Independence complied with provisions of the Job Training Partnership Act, 29 U.S.C. Secs. 1501-1781 (1982), that the Governor did not have authority to make other appointments, and that the City's appointments should be certified by the Governor. The district court[2] dismissed the actions for want of federal subject matter jurisdiction. 580 F.Supp. 780. The City appeals. We reverse and remand.
 
 
 2
 I. BACKGROUND.
 
 
 3
 The Job Training Partnership Act (the Act or JTPA), which took effect October 1, 1983, establishes a system for providing job training to economically disadvantaged people. The Act replaces the Comprehensive Employment and Training Act (CETA), 29 U.S.C. Secs. 801-999, and demonstrates the intention of Congress to encourage greater "private sector" participation in job training programs. In furtherance of this objective, many basic supervisory functions previously performed by the federal government have been turned over to the states.
 
 
 4
 The system is administered at the local level by Private Industry Councils (PICs) whose members are drawn from private industry, educational agencies, organized labor, community organizations, etc. Each PIC oversees activities in a given "service delivery area." The dispute here concerns appointments to the PIC responsible for the service delivery area comprising eastern Jackson County, Missouri. 29 U.S.C. Sec. 1512(d) provides the method of appointing members:
 
 
 5
 (1) In any case in which there is only one unit of general local government with experience in administering job training programs within the service delivery area, the chief elected official of that unit shall appoint members to the council from the individuals nominated or recommended under subsection (c) of this section.
 
 
 6
 (2) In any case in which there are two or more such units of general local government in the service delivery area, the chief elected officials of such units shall appoint members to the council from the individuals so nominated or recommended in accordance with an agreement entered into by such units of general local government. In the absence of such an agreement, the appointments shall be made by the Governor from the individuals so nominated or recommended.
 
 
 7
 Two units of general local government exist in eastern Jackson County: Jackson County and the City of Independence. Therefore, section 1512(d)(2) applies to this case.
 
 
 8
 On May 20, 1983, Jackson County and the City of Independence entered into an agreement, as required by section 1512(d)(2), regarding the appointment of members to the PIC for eastern Jackson County. The City and the County agreed that nine members of the PIC would be appointed by the county executive and six by the Mayor of the City of Independence, with the approval of the City Council. However, on June 29, 1983, the City and County entered into another agreement which provided that the City's six appointments would be made by the City Council rather than the Mayor. The Mayor and one council member declined to sign this second agreement, so five council members, including one signing as mayor pro tempore, executed it. On the same date, the City Council passed a resolution appointing six members to the PIC. These appointments, along with the nine appointments made by the county executive of Jackson County, were submitted to Governor Bond for certification as required by section 1512(g), which states in part: "The Governor shall certify a private industry council if the Governor determines that its composition and appointments are consistent with the provisions of this subsection."
 
 
 9
 Governor Bond refused to certify the appointments, advising that the nomination documents did not comply with the May 20 consortium agreement between the City and Jackson County. Governor Bond treated the situation as a case where the two local government units failed to reach an agreement, and proceeded to make his own appointments to the PIC. Governor Bond acted under the authority of section 1512(d)(2), which states, "[i]n the absence of such an agreement, the appointments shall be made by the Governor from the individuals so nominated or recommended."
 
 
 10
 The City then brought this suit for declaratory judgment under 28 U.S.C. Secs. 2201-02 (1982). The complaint did not contain a specific allegation of federal jurisdiction, although it did state that "this action arises under [the JTPA]." The district court thereafter requested briefing on the issue of subject matter jurisdiction.
 
 
 11
 On February 24, 1984, the court dismissed the complaint for want of subject matter jurisdiction. In its memorandum opinion, the court construed the complaint to allege a claim in the nature of breach of contract, originating in the May 20, 1983 agreement between the City and Jackson County. Relying on the rationale of Jackson Transit Authority v. Transit Union, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982), the district court determined the action to be inappropriate for determination as a federal question and entered its dismissal. This appeal followed.
 
 
 12
 II. FEDERAL QUESTION JURISDICTION.
 
 
 13
 We do not agree that this action seeks redress for breach of contract. Rather, the City of Independence seeks enforcement of rights granted to it by federal statute, and the City directly attacks the power of the Governor under the federal statute to appoint members of his own choice to the PIC. Resolution of the controversy requires a court to answer at least the following questions:
 
 
 14
 1) Whether the Act can be construed to provide for appointment of PIC members by the City Council.
 
 
 15
 Section 1512(d)(2) of the Act grants the power of appointment to the "chief elected officials" of the local governmental units located within a service delivery area. However, that same section also provides that the nominees shall be appointed "in accordance with an agreement entered into by such units of general local government." Here, it can be argued that the City's appointments were invalid because not made by its chief elected officer or, alternatively, were valid because made in accordance with an agreement between units of general local government. Thus, ambiguity exists concerning the application of the federal statute under the facts of this case.
 
 
 16
 2) Whether the Governor has authority to determine that the City's appointments do not comply with the requirements of the Act.
 
 
 17
 Section 1512(g) of the Act provides in part: "The Governor shall certify a private industry council if the Governor determines that its composition and appointments are consistent with the provisions of this subsection."
 
 
 18
 Here the Governor declined to certify the appointments made by the City Council under the June 29 agreement. In deciding the rights of the parties, a court may be obliged to construe the term "shall" in this section of the statute and also rule whether or not the section grants the Governor some power of interpretation of the statute under the "if the Governor determines" clause.
 
 
 19
 3) Whether section 1512(d)(2) authorizes the Governor to appoint members to the PIC under the circumstances of this case.
 
 
 20
 Section 1512(d)(2) authorizes the governor to appoint members "in the absence of * * * an agreement [between units of local government]." In this case, the governmental units entered into an agreement, but the Governor determined that it did not satisfy the requirements of the Act. The statute must be construed to determine whether the Governor has the power of appointment under these circumstances.
 
 
 21
 The dispute in this case was triggered by the consortium agreement between the City and Jackson County, but it presents more than a question of the interpretation of that agreement. Instead, it demands interpretation of the provisions of the JTPA. Cases that involve a genuine controversy regarding the construction of a federal law raise a federal question sufficient to confer jurisdiction under 28 U.S.C. Sec. 1331. Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 677, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974); Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912); Madsen v. Prudential Federal Savings & Loan Ass'n, 635 F.2d 797, 801 (10th Cir.), cert. denied, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1980).
 
 
 22
 The district court's reliance on Jackson Transit Authority v. Transit Union, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982) is misplaced. Jackson Transit discussed the question of when contracts contemplated by federal statutes may set forth federal claims. Id. at 22, 102 S.Ct. at 2206. The federal question in this case originates in the language of the statute itself, not in the agreement contemplated by the statute.
 
 
 23
 Because it calls for the construction of a federal statute, we hold that federal question jurisdiction does exist in this case. We therefore reverse and remand this case to the district court for further proceedings.
 
 
 24
 McMILLIAN, Circuit Judge, dissenting.
 
 
 25
 I respectfully dissent and would affirm the district court's dismissal of the complaint. In my view the complaint does not arise under the Constitution and laws of the United States and does not state a federal cause of action.
 
 
 26
 The City of Independence argues first that federal question jurisdiction exists because the issues in this case will require construction of the Job Training Partnership Act, 29 U.S.C. Sec. 1501 et seq. (1982) (JTPA). I do not agree. In my opinion there are only two issues in this case: (1) whether the chief elected official of the City is the mayor or the city council, and (2) whether the City and Jackson County entered into an agreement concerning appointments to the Private Industry Council. Resolution of neither issue requires construction of JTPA.
 
 
 27
 To bring a case within [28 U.S.C. Sec. 1331(a) ], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.
 
 
 28
 Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (citations omitted); see Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974); Local Division 732 v. Metropolitan Atlanta Rapid Transit Authority, 667 F.2d 1327, 1341 (11th Cir.1982) (Atlanta Transit). It is not enough that the right to be enforced by the suit originates in the laws of the United States, Shoshone Mining Co. v. Rutter, 177 U.S. 505, 507, 20 S.Ct. 726, 44 L.Ed. 864 (1900), or that the suit would not exist but for the federal statute, Oklahoma v. Blankenship, 447 F.2d 687, 692 (10th Cir.), cert. denied, 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1971), or that some aspect of federal law is disputed or called into question, Gully v. First National Bank, 299 U.S. at 115, 57 S.Ct. at 98; Bernstein v. Lind-Waldock & Co., 738 F.2d 179, 184 (7th Cir.1984). A lawsuit does not arise under a federal law "unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912).
 
 
 29
 The Supreme Court in a recent case held that the district court "strictly speaking" had jurisdiction over a suit brought by the union against the Jackson Transit Authority. Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982) (Jackson Transit ). The union alleged that the Transit Authority had violated Sec. 13(c) of the Urban Mass Transportation Act of 1964, which required the Transit Authority to enter into collective bargaining with the union. The Court held that the complaint is " 'drawn so as to claim a right to recover under the Constitution and laws of the United States.' " Id., citing Bell v. Hood, 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946). The complaint required a construction of the Urban Mass Transportation Act. The union would win or lose its suit depending on the construction given to the statute.
 
 
 30
 In Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court reiterated the test for federal question jurisdiction:
 
 
 31
 Under our interpretations, Congress has given the lower federal courts jurisdiction to hear ... only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.
 
 
 32
 Id. at 25, 103 S.Ct. at 2856. "[O]riginal federal [question] jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element...." Id. at 11, 103 S.Ct. at 2848.
 
 
 33
 Whether the mayor or the city council is the chief elected official of the City is the first issue presented by this case. The definition of the term "chief elected official" as used in Sec. 1512(d)(2) is not disputed. The controversy centers on which entity is the City's chief elected official. The governor asserts that the mayor is the chief elected official; the City asserts that the mayor pro tempore is the chief elected official in the mayor's absence. This dispute will be resolved by a construction and application of state and local laws, not by a construction of JTPA. Oklahoma v. Blankenship, 447 F.2d at 691; Johnston v. Byrd, 354 F.2d 982, 984 (5th Cir.1965). The federal statute provides no guidance in deciding who is the City's chief elected official. This issue clearly does not raise a federal question.
 
 
 34
 The second issue in this case--whether there was an agreement between the City and Jackson County--likewise will be resolved without the construction of or reliance on any federal law. Johnston v. Byrd, 354 F.2d at 984. Resolution of this issue depends on whether the persons or entities purporting to enter into an agreement on behalf of the City had the authority to do so. The City charter and other local and state laws define the authority of municipalities to enter into agreements. This issue does not require a construction of federal law.
 
 
 35
 Because federal law is not a pivotal issue in the present case, there is no federal question jurisdiction. See Atlanta Transit, 667 F.2d at 1341; North American Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233 (2d Cir.1978).
 
 
 36
 Further, even if federal question jurisdiction exists, I would hold that the district court properly dismissed the complaint because it fails to state a federal cause of action. The Supreme Court in Jackson Transit held that Congressional intent is the critical factor in deciding whether a federal cause of action exists: "[w]henever we determine the scope of rights and remedies under a federal statute, the critical factor is the congressional intent behind the particular provision at issue." Id. 457 U.S. at 22, 102 S.Ct. at 2206. The Court, after an extensive examination of the legislative history of the Urban Mass Transportation Act of 1964, concluded that Congress did not intend to create a federal cause of action for breaches of agreements required by federal statute between transit workers and local governments. Id. at 29, 102 S.Ct. at 2210.
 
 
 37
 The JTPA legislative history does not contain any express reference to federal jurisdiction or a federal cause of action. The legislative history, however, clearly indicates that the states are to be given responsibility for the JTPA program. The Senate report states:
 
 
 38
 Under the legislation reported by the Committee, the state will be the key actor in the approval of job training programs. First, and perhaps most important, the state will define the structure of the delivery system through the determination of service delivery areas. This critical determination will be done by the Governor after receiving the proposals of the state job training council and after reviewing the proposals of local government and business officials. The Governor will also be in charge of approving locally developed plans, or monitoring and auditing the performance of plans, of insuring fiscal responsibility and compliance with Federal mandates as well as of running statewide programs. In short, the basic supervisory role previously performed by the federal government will now be turned over to the state, the place where it really belongs....
 
 
 39
 S.Rep. No. 469, 97th Cong., 2d Sess. 3 (emphasis added), reprinted in 1982 U.S.Code Cong. & Ad.News 2636, 2638.In the past, the federal government prescribed at considerable length and in considerable detail how training programs are to be conducted, which too often resulted in excessive regulation. This bill departs from that practice.... The federal responsibility is not to specify how the results are to be accomplished but to ensure that the expenditure of federal funds achieves the objectives intended by the legislation.... This is consistent with the governmental wide emphasis on deregulation which is so critical to true local decision making....
 
 
 40
 Id. at 2639. In light of Congress' clearly stated intent to give the states responsibility for the JTPA program, it is reasonable to infer that Congress did not intend that federal courts would decide the type of issues raised in this case. Atlanta Transit, 667 F.2d at 1339. The City and other plaintiffs having these kinds of disputes may seek relief in state courts. No federal law is involved and, therefore, federal courts are no better able to resolve these issues than state courts.
 
 
 41
 Accordingly, I would affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction and for failure to state a federal cause of action.
 
 
 
 *
 The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Waris and Jackson County later filed a motion for realignment of parties, seeking to be named as plaintiffs rather than defendants. The district court reserved its ruling on this motion pending resolution of the jurisdictional issue
 
 
 [2]
 The Honorable John W. Oliver, United States Senior District Judge for the Western District of Missouri