**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-5109

---

JOBS, TRAINING AND SERVICES, INC., ET AL.,

Plaintiffs-Appellees,

versus

EAST TEXAS COUNCIL OF GOVERNMENTS, ET AL.,

Defendants,

EAST TEXAS COUNCIL OF GOVERNMENTS,

Defendant-Cross Claim
Plaintiff-Appellee,

versus

TEXAS DEPARTMENT OF COMMERCE,

Defendant-Cross Defendant and
Cross Claim Plaintiff-Appellant,

versus

UNITED STATES DEPARTMENT OF LABOR,

Defendant and Cross Defendant-
Appellee-Appellant.

---

Appeals from the United States District Court
for the Eastern District of Texas

---

Before WISDOM, DeMOSS and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

This is an appeal from summary judgment granted in favor of plaintiffs in this declaratory judgment action. The principal issue is whether certain non-profit entities are entitled to keep (i) contractual revenues in excess of cost and (ii) interest income earned on federal funds dispersed to them under the Job Training Partnership Act (JTPA), 29 U.S.C. § 1501 et. seq. (West 1985). There are three competing interests in this tug of war over federal funds. Holding the first rope is the Department of Labor (DOL) in its capacity as federal administrator of the JTPA. Holding the second is the Texas Department of Commerce (TDOC) in its capacity as state recipient of the federal funds, which it disburses in furtherance of JTPA objectives. Holding the third, as well as the money, are two non-profit private corporations, Jobs, Training, and Services, Inc. (JTS) and East Texas Employment and Training, Inc. (ETI), who provided job training services to local citizens under the Act. Aligned with JTS and ETI, though technically a defendant, is the East Texas Council of Governments (ETCOG), who received the funds from the state and issued the JTS and ETI subcontracts. Because we find that the dispute was not ripe for judicial resolution in a federal court, we will vacate and remand with instructions.

2

## RELEVANT FACTS

Under the JTPA, DOL disburses job training grants to individual states pursuant to agreements between the secretary of labor and the governor. In Texas, TDOC acts for the governor and is the initial recipient of JTPA funds.[1] TDOC, in turn, distributes the money to "service delivery areas", which are geographic regions of the state designated by the governor pursuant to the Act. See 29 U.S.C. § 1511-1512. Since 1983 ETCOG has acted as the subrecipient and administrative unit under the JTPA in the East Texas Service Delivery Area. In that role ETCOG receives JTPA funds from TDOC pursuant to a written contract. ETCOG, in turn, enters into subcontracts with private and public entities for the delivery of job training services. ETCOG's primary subcontractors since 1983 have been the two non-profit private corporations that are the plaintiffs in this suit, JTS and ETI (subcontractors). Since 1984 ETCOG's subcontracts with JTS and ETI have provided for compensation on the basis of performance rather than cost experience. Payment is made on a negotiated-in-advance "fixed price" or a "single unit charge", depending on the service provided. Neither form of payment is subject to adjustment based on the actual cost experience of the subcontractor.

During 1990 and early 1991, TDOC and DOL officials conducted separate reviews of ETCOG's procurement practices and examined

---

[1]Prior to September 1987, the Texas Department of Community Affairs acted for the Governor as initial grant recipient. We will refer to the State of Texas defendant as TDOC, without differentiating which agency was acting at a given time.

3

ETCOG's relationship with JTS and ETI. The reviewing officials found that between 1984 and 1989 JTS and ETI received substantial federal revenues in excess of their program costs, and that part of that excess had been invested and was earning interest. Alarmed by what they believed was an inappropriate accumulation of federal funds in the East Texas job training program, DOL and TDOC officials met on several occasions to discuss state and federal grounds for recapture. The DOL, through the Office of the Inspector General (OIG), initiated a financial audit to determine whether the program costs reported by ETCOG, JTS and ETI were reasonable. In October 1992, the OIG released a preliminary report, concluding that an inadequate procurement system and unreasonable program costs had enabled JTS and ETI to accumulate large amounts of excess revenue from the JTPA program. However, the DOL grant officer has made no initial or final determination against any party regarding the allowability of the costs questioned by the audit.

Meanwhile TDOC, with the help of DOL, pursued its own audit and enforcement measures. In February 1991, TDOC issued an initial and then a final determination against ETCOG stating that JTS and ETI, as non-profit corporations, were not entitled to retain interest earned on an advance of federal funds. The final determination ordered ETCOG to recover $585,951.00 from JTS and $256,548.00 from ETI and advised them that failure to take appropriate action could result in the suspension of ETCOG's contract or the withholding of funds. TDOC also issued an initial

4

determination as to the excess revenues.  In that letter, ETCOG was directed to recover excess revenues in the amount of $2,078,379.00 from JTS and $1,192,853.00 from ETI within thirty days.  DOL concedes that it supported TDOC's effort to find a way to recapture the funds on state law grounds and that it participated in the drafting of the determination letters issued to ETCOG.  In August 1991, enforcement of the state determinations was stayed, at DOL's request, pending resolution of the federal audit and administrative process.

## PROCEDURAL HISTORY

In September 1991, JTS and ETI filed this action against ETCOG and TDOC in state court, seeking a declaratory judgment that the contested funds were not subject to recapture.  Almost immediately ETCOG filed a notice of removal to the U.S. District Court, asserting federal question jurisdiction based on the JTPA.  After the action was removed to federal court, TDOC moved to dismiss, arguing that the DOL was an indispensable party.  The district court denied the motion but ordered the plaintiffs to add DOL to the suit. Thereafter, ETCOG filed cross-claims against TDOC and DOL, basically aligning itself with the plaintiff subcontractors. TDOC, which did not want to be caught in the middle,  filed: (1) cross- and counter-claims against JTS, ETI and ETCOG seeking judgment that state law allowed it to recapture the funds; and (2) a cross-claim against DOL seeking judgment that DOL's right to recover from TDOC was contingent upon TDOC's right to recover from the subcontractors.

5

In June 1992, DOL filed a motion to dismiss for lack of subject matter jurisdiction, which the court denied. Thereafter, JTS and ETI moved for summary judgment against TDOC and DOL. ETCOG adopted that motion in toto, and TDOC adopted that motion to the extent it sought judgment that DOL could not recapture the funds. TDOC also filed its own motion for partial summary judgment against JTS and ETI, claiming that state law allowed it to recapture the funds. In May 1993 the district court granted summary judgment in favor of JTS, ETI, and ETCOG, holding that neither TDOC nor DOL could recapture the contested funds. The court did not, however, grant TDOC any relief on its motion for summary judgment against DOL on the cross-claims. TDOC appeals the court's failure to expressly grant that relief, arguing that it was an oversight on the part of the district court. TDOC does not appeal the district court's summary judgment against it on the substantive issue of whether state law allows recapture of the contested funds. DOL appeals all aspects of the district court's order granting summary judgment.

## NATURE OF THE DISPUTE

Prior to July 1989, DOL had no published policy regarding whether non-profit entities could retain revenue received in excess of costs under performance-based contracts. Agency notices indicate that those revenues were often retained by the subcontractors and could be used for any purpose consistent with the non-profit charter. See, e.g., 53 Fed. Reg. 7989, 7992 (1988). In March 1989, DOL published an official interpretation of the

6

requirements for acceptable performance-based contracts. 54 Fed. Reg. 10459 (1989). That policy, which became effective July 1, 1989, required non-profit subcontractors to treat revenue in excess of costs as "program income," which could not be used for purposes other than to provide additional services in furtherance of JTPA objectives. Id. at 10467.

Subcontractors filed this suit seeking a judgment that the contested funds were properly earned and could not be recaptured by either DOL or TDOC. From the record it is clear that the primary issue at that time was whether DOL, or TDOC as their proxy, could apply the July 1989 "no-excess-revenues-for-non-profits" policy retroactively to reach the revenues generated by JTS and ETI in the years 1984 through 1989. Both DOL and TDOC have subsequently conceded that the July 1989 policy cannot be applied retroactively, but have sought to preserve their right to determine whether those revenues were otherwise properly earned under state and federal law. DOL characterizes this suit as a premature attack on a non-final DOL enforcement action. As such, DOL claims that JTPA sections 1576(a) and 1578(a)(1) provide the exclusive avenue for administrative and judicial review of DOL action.[2] Under those

---

[2]JTPA § 1576(a) provides that: (1) any applicant for financial assistance who is dissatisfied because the Secretary determines not to award financial assistance; (2) and any recipient upon whom a corrective action or a sanction has been imposed can request a hearing before a DOL administrative law judge. 29 U.S.C. § 1576(a). The section further states that, aside from those two claims and discrimination claims under § 1577, "all other disputes arising under this chapter shall be adjudicated under grievance procedures established by the recipient or under applicable law other than this chapter." Id. JTPA § 1578(a)(1) provides that any party to a proceeding which resulted in a final order under § 1576

provisions, the subcontractors have no recourse until the agency actually issues a sanction. Additionally, the subcontractors would be required to exhaust the administrative remedies provided in section 1576, after which exclusive review of the agency's determination would be vested in the court of appeals pursuant to section 1578.

The subcontractors and ETCOG, on the other hand, claim that DOL and TDOC's contention that the money can be recaptured on other state or federal law grounds is nothing more than a sham, designed to conceal what is in fact a secret and unlawful attempt to enforce the July 1989 policy on a retroactive basis in violation of their contract, state law, the JTPA and the Due Process and Equal Protection Clauses of the United States Constitution. Thus, the subcontractors characterize their claims as statutory or constitutional challenges to DOL's method of JTPA enforcement. Those claims, the subcontractors and ETCOG argue, can be reviewed under section 704 of the Administrative Procedure Act.[3]

We need not decide who has the better view of the case. Regardless of whether the JTPA or the APA provides the avenue for review, the dispute cannot now be heard in federal court. Our

---

can obtain judicial review of that order in the United States Court of Appeals. 29 U.S.C. § 1578(a)(1).

[3]The APA effects a broad waiver of sovereign immunity and allows any person adversely affected or aggrieved by agency action to seek judicial review. 5 U.S.C. § 702. Section 704 specifies what actions can be reviewed: "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

review requires consideration of the district court's authority to hear two separate issues: (1) whether the funds are subject to capture on the basis of federal law (the federal law claims) and (2) whether the funds are subject to dispute on the basis of state law (the state law claims).

## FEDERAL LAW CLAIMS

### JTPA Preemption

DOL first argued that the district court lacked jurisdiction because JTPA sections 1576 and 1578 provide a comprehensive and exclusive means of administrative and judicial review of DOL action under the JTPA. We disagree. Section 1576 encompasses only a very narrow class of DOL actions: determinations to deny financial assistance and the imposition of corrective action or sanctions against a "recipient." DOL regulations define a "recipient" to mean the state entity receiving funding directly from the DOL. 29 C.F.R. § 626.5 (1994). Contrary to DOL's position here, it has argued in other courts that substate grantees are not "recipients" and have no recourse under § 1576, except perhaps the right to intervene when in fact administrative proceedings are pending between DOL and the state. See Northwest Pennsylvania Training Partnership Consortium, Inc. v. United States Dep't of Labor, No. 89-3670 (3d Cir. 1990)(substate grantee was not a recipient and had no right to an administrative hearing although DOL had issued sanctions ordering the state to collect funds from the plaintiff); see also County of Los Angeles v. United States Dep't of Labor, 891 F.2d 1390 (9th Cir. 1989) (leaving open issue of whether substate

9

grantee was recipient and holding that, because DOL did not sanction plaintiff directly, plaintiff had no recourse under § 1576 but could intervene in pending DOL/state administrative proceedings); City of New Orleans v. United States Dep't of Labor, 825 F. Supp. 120 (E.D. La. 1993)(court lacked jurisdiction but substate grantee could intervene in pending DOL/state administrative proceedings). Furthermore, section 1576 contains a broad savings clause which makes plain that other disputes are governed by state law grievance procedures or other non-JTPA law. 29 U.S.C. § 1576. Therefore, in our view, sections 1576 and 1578 do not provide an exclusive avenue for all claims and all plaintiffs challenging DOL action under the JTPA. Compare Thunder Basin Coal Co. v. Reich, 114 S. Ct. 771 (1994) (language, structure, purpose and legislative history of the Federal Mine Safety Act evidence Congress' intent to streamline enforcement by directing ordinary challenges through a single review process).

This case does not require that we decide the precise scope of sections 1576 and 1578. If section 1576 applies to ETCOG and these subcontractors, the district court lacked jurisdiction both because there has been no DOL sanction imposed and because section 1578 vests exclusive jurisdiction in the Court of Appeals after administrative process. If section 1576 does not apply, there has been no final action as required by the APA.

## APA Finality

The APA permits review of agency action when authorized by statute, which is not the case here, or when there has been "final

10

agency action" and there is no other adequate remedy in a court. Veldhoen v. United States Coast Guard, 35 F.3d 222, 225 (5th Cir. 1994). "If there is no `final agency action' as required by the controlling statue, a court lacks subject matter jurisdiction." Id. at 225. DOL has not made any determination or imposed any sanction against any party to this suit with regard to JTS and ETI's excess revenues that can be considered "final agency action" within the meaning of any provision of the JTPA or DOL's implementing regulations.

Subcontractors and ETCOG argue that DOL's conduct in the investigation, and in particular its work with TDOC in attempting to disallow the revenues on the basis of state law, sufficiently establishes final agency action. However, "an agency's initiation of an investigation does not constitute final agency action." Veldhoen, 35 F.3d at 225. Likewise, "[a]n attack on the authority of an agency to conduct an investigation does not obviate the final agency action requirement." Id. "Normally, the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision." Id.

The subcontractors offered evidence that DOL assisted in drafting TDOC determination letters and that DOL believed at one point that the July 1989 policy could be applied retroactively to reclaim JTS and ETI revenues. The Supreme Court has identified four pragmatic factors for determining when agency action is final. Those factors include: (1) whether the challenged action is a definitive statement of the agency's position; (2) whether the

11

action has the status of law with penalties for noncompliance; (3) whether the impact on the plaintiff is direct and immediate; and (4) whether immediate compliance is expected. Abbott Laboratories v. Gardner, 87 S. Ct. 1507, 1516-17 (1967). Although TDOC's determinations, were they enforced, could have the status of law, we refuse to accept the subcontractors invitation to impute TDOC's enforcement actions to DOL. Cooperation between the state and federal agencies implementing a federal statute is neither unusual nor insidious. Likewise, as long as those agencies are acting in good faith, they should be free to explore every potentially legitimate basis for carrying out the duties assigned to them by Congress. The judiciary should intervene to review agency action only when, and to the extent, that such action has an "actual or immediately threatened effect." Lujan v. National Wildlife Federation, 110 S. Ct. 3177, 3191 (1990); Taylor-Callahan-Coleman Counties v. Dole, 948 F.2d 953, 958-59 (5th Cir. 1991). DOL has taken no action against JTS and ETI which has the force of law and demands immediate compliance. In fact, what DOL seeks to protect in this suit is its right to reach a definitive position. See Abbott Laboratories, 87 S. Ct. at 1515 (ripeness doctrine, which incorporates the finality requirement, is intended to protect "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties").

We sympathize with the district court's frustration that, although it has been five years since the audit and over two years

12

since the OIG report, DOL still has no final position concerning ETCOG's procurement system and JTS and ETI's revenues. This is not, however, an enforcement action. DOL's bureaucratic sloth in making any final determination in this matter does not convert what is essentially pre-enforcement investigation into final agency action. Given the absence of final agency action, the district court was without subject matter jurisdiction to entertain any of the subcontractors' or ETCOG's claims against DOL.

### Ripeness

Even if the finality requirement did not preclude district court jurisdiction over the claims against DOL, we would still hold that the claims against both DOL <u>and</u> TDOC which seek relief on the basis that the revenues were properly earned under the JTPA are not ripe for judicial resolution. Ripeness is a function of an issue's fitness for judicial resolution as well as the hardship imposed on the parties by delaying court consideration. <u>Merchant's Fast Motor Lines, Inc. v. I.C.C.</u>, 5 F.3d 911, 919-20 (5th Cir. 1993). Factors governing whether an issue is ripe, in addition to the APA's finality requirement (which applies only to DOL), include: (1) whether the issues presented are purely legal; (2) whether the impact on the petitioners is direct and immediate; and (3) whether resolution will foster effective administration of the JTPA. <u>Id</u>. at 919.

Determining whether the funds in issue are subject to recapture under the JTPA or its implementing regulations is not a purely legal inquiry. Rather, the issue is fact-bound, and

13

resolution will depend upon the particulars of ETCOG's procurement system and the specific costs reported by JTS and ETI.  The facts offered to support JTS, ETI and ETCOG's claim that the funds in dispute were properly earned relate primarily to whether DOL and TDOC were retroactively applying the July 1989 "no-excess-revenues for-non-profits" policy.  The record is insufficient, and agency expertise will be required, to rule out other possible grounds for recapture under federal law.  As of yet, neither TDOC nor DOL has issued any determination or taken any action disallowing costs on the basis of federal law.  TDOC's initial and final determinations were based on state law grounds for disallowing revenues in excess of costs under Texas' regulations implementing the JTPA.  There has, therefore, been no state or federal agency action which has a direct or immediate impact on the subcontractors or ETCOG as to their claims seeking relief on the basis of federal law.  DOL is continuing its investigation into the facts relevant to the broader determination of whether the revenues were proper on any basis. Judicial intervention at this stage will deter rather than foster effective administration of the statute.  The subcontractors' and ETCOG's claims against DOL and TDOC seeking a declaration that the revenues are not subject to recapture under any provision of federal JTPA law are not ripe for judicial resolution.

JTS and ETI contend that their claims are not subject to finality or ripeness requirements because they are based on the Constitution.  The subcontractors' constitutional claims, to the extent they are even colorable, relate to the issue of whether DOL

14

or TDOC can apply the July 1989 "no-excess-revenue-for-non-profits" policy retroactively. Both the DOL and TDOC have repeatedly conceded that revenues in excess of costs prior to July 1, 1989 are not program income and may be retained by the contractor, provided that those revenues were otherwise properly earned under the Act and its implementing regulations. There is therefore no justiciable issue on the retroactivity point. In any event, the rule excusing constitutional challenges from the finality and ripeness doctrines is not mandatory. See Thunder Basin Coal Co. v. Reich, 114 S. Ct. 771 (1994). The subcontractors and ETCOG are not immediately threatened with any agency action based on retroactive application of the July 1989 policy and those claims are therefore not ripe for judicial resolution.

The subcontractors' claims that the DOL and TDOC secretly enforced the policy by finding independent state or federal law grounds to disallow the revenues is nonsensical. If, in fact, adequate and independent state or federal law grounds exist for disallowing the JTS and ETI revenues, then DOL is not relying on the objectionable policy. Should the DOL decide to sanction the contractors directly, the agency will have to disclose the basis of that decision. A fact-intensive review of that decision can then occur, either under the JTPA or the APA. Therefore, there can be no covert retroactive enforcement of the 1989 policy.

We will not risk condoning the misexpenditure of millions of dollars in federal grant money by adjudicating, in advance of final action by the responsible federal agency, whether the funds in

15

question were properly earned. The district court lacked subject matter jurisdiction to entertain JTS and ETI's claims against DOL. Allowing these parties to proceed with the identical claims, based on federal law, against the responsible state agency would be interfering unnecessarily with the administrative process. JTS, ETI and ETCOG have not demonstrated any hardship or detriment to their interests which justifies that intervention. To the extent the subcontractors and ETCOG sought relief against TDOC based on violation of federal law, those claims are not ripe for judicial resolution.

### STATE LAW CLAIMS

What remains are the subcontractors' and ETCOG's claims against TDOC for breach of contract and violation of the state law implementing the JTPA. We conclude that these claims do not fall within the limited jurisdiction of the federal courts. Federal question jurisdiction does not exist unless a right or immunity created by federal law is an essential element of the plaintiff's cause of action. Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995) (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 111 (1936)). The subcontractors' and ETCOG's claims do not require construction of any provision of the JTPA. Compare City of Independence v. Bond, 765 F.2d 615, 618 (8th Cir. 1985) (holding jurisdiction existed because claims went beyond contract and required construction of JTPA § 1512). Both the statutory language and the legislative history of the JTPA indicate that Congress did not intend for JTPA contracts at the state level to be

16

"creations of federal law" that granted federal rights. <u>See</u> <u>Jackson Transit Authority v. Transit Union</u>, 102 S. Ct. 2202, 2260-08 (1982) (court must examine statutory language and legislative history to determine whether Congress intended for contract contemplated by federal statute to set forth federal claims); <u>City of Independence</u>, 756 F.2d at 618-19 (distinguishing the case as involving more than an interpretation of the state-level JTPA contract). JTPA section 1554 requires state-level participants to maintain grievance procedures. 29 U.S.C. § 1554. In addition, the broad savings clause in JTPA section 1576 specifies that state law grievance procedures or other non-JTPA law will govern resolution of all but a narrow class of disputes. 29 U.S.C. § 1576. By passing the JTPA, Congress departed from the policy in the predecessor legislation, the Comprehensive Employment and Training Act (CETA), and intended to delegate the "basic supervisory role previously performed by the federal government" to the state, "where it really belongs." S. REP. NO. 469, 97th Cong. (1982), *reprinted in* 1982 U.S.C.C.A.N. 2336, 2638. Recognizing that job training programs had been overregulated at the federal level under CETA, Congress wanted to make the state the "key actor" charged with ensuring financial responsibility and compliance with federal mandates. <u>Id</u>. Thus, the JTPA holds the states directly responsible for proper expenditure of grant money and delegates to the state the authority for establishing fiscal control procedures to assure the proper expenditure of JTPA funds. <u>See</u> 29 U.S.C. § 1574. We do not hold that a state-level dispute can never "arise

17

under" the JTPA.  When as here, however, the plaintiffs' claims do not require construction of any provision of federal law, the fact that the contract or state law alleged to have been breached is a creation of, or exists as the result of, a federal statute is insufficient to confer federal jurisdiction.

## CONCLUSION

The district court lacked jurisdiction to hear the subcontractors' and ETCOG's federal law claims against the DOL, which amounted to pre-enforcement attacks on non-final agency action.  For similar reasons, the district court should have declined to entertain the federal law claims against TDOC as not ripe for judicial resolution.  Finally, the district court lacked jurisdiction to consider the subcontractors' and ETCOG's claims seeking relief that the disputed funds were not subject to recapture on the basis of contract or state JTPA law.  Accordingly, the district court's order granting summary judgment in favor of JTS, ETI and ETCOG will be vacated and the case remanded to the district court with instructions.  As a result of this decision, both the state and federal agencies charged with administering the JTPA remain free to pursue to final agency action regarding whether the subcontractors' costs and excess revenues were reasonable and necessary under ordinary agency standards and procedures existing prior to July 1989.  Given our conclusion that the district court should not have heard the case, TDOC's contention on cross-appeal that the district court neglected to enter summary judgment in its favor against DOL is moot.

18

The district court's order granting summary judgment in favor of JTS, ETI and ETCOG is VACATED, and the cause is REMANDED with instructions (i) to dismiss all actions asserted against the DOL and any claim under federal law against TDOC and (ii) to remand to the state court from which this action was removed all remaining state law claims and causes of action.