**Harold E. L. BARTON, Plaintiff-Appellant,**

v.

**Rogers C. B. MORTON, Secretary of the Department of the Interior of the United States of America, Defendant-Appellee.**

**No. 71–1991.**

United States Court of Appeals,
Ninth Circuit.
May 30, 1974.

---

to two lode mining claims. The applications were denied and the claims held void on the ground that applicants had not shown discovery of a valuable mineral deposit as required by the applicable statutes. 30 U.S.C. §§ 22, 23, 29, 35. Appellant filed this action to obtain judicial review of the Department's ruling. The district court gave judgment for the Government. We affirm.

■ The general legal standards to be applied are well established. "[T]he only statutory standard has been and still is the 'discovery' of 'veins or lodes' containing 'valuable deposits' of the named metals or others." Converse v. Udall, 399 F.2d 616, 619 (9th Cir. 1968). Appellant relies upon recognized glosses upon this statutory standard. Thus, the cases have held that whether a valuable deposit has been discovered is a factual question to be resolved by asking whether "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine . . . ." Castle v. Womble, 19 Interior Dec. 455, 457 (1894), approved in Chrisman v. Miller, 197 U.S. 313, 322, 25 S.Ct. 468, 49 L.Ed. 770 (1905).[2] Appellant emphasizes that under this "prudent man" test, "proved ability to mine the deposit at a profit need not be shown." Adams v. United States, 318 F.2d 861, 870 (9th Cir. 1963). The question is not "whether assured profits were presently demonstrated, but whether, under the circumstances, a person of ordinary prudence would expend substantial sums in the expectation that a profitable mine might be developed." Id. See also Barrows v. Hickel, 447 F.2d 80, 82 (9th Cir. 1971).

■ There is no dispute as to the material facts. Veins have been exposed on both of the claims at issue. They contain some gold and silver, together

William B. Murray (argued), Portland, Or., for plaintiff-appellant.

Jacques B. Gelin (argued), Shiro Kashiwa, Asst. Atty. Gen., Lands & Natural Resources Div., Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for defendant-appellee.

Before CHAMBERS, BROWNING and ELY, Circuit Judges.

OPINION

BROWNING, Circuit Judge:

Appellant and another [1] applied to the Department of the Interior for patents

---

1. Kenneth O. Watkins, since deceased.

2. This "prudent man" test is complemented by a "marketability test," requiring that it "be shown that the mineral can be 'extracted, removed and marketed at a profit . . . .'" United States v. Coleman, 390 U.S. 599, 600, 88 S.Ct. 1327, 1329, 20 L.Ed. 2d 170 (1968).

with base metals. The mineralization is spotty and uneven. The vein material thus far exposed is not of sufficient value to be mined economically. However, along some veins of this kind on nearby claims, shoots or pockets have been found containing ore of sufficient quality and quantity to be profitably mined. Expert witnesses testified that a prudent man would be justified in tunneling into or along the veins on the claims in search of similar shoots or pockets. This testimony was not controverted.

Appellant contends that this showing precisely meets the "prudent man" test. As appellant puts it, he and his predecessors "have exposed veins which carry so much mineral values that all parties agree that further work is justified and should be carried on to pursue further these same veins with a reasonable expectation that a profitably mineable quantity of such ore will be reached. The basis for the reasonable expectation is that similar veins in nearby mines have yielded profitable ore shoots under comparable geologic conditions."

The Department's position is that appellant has not yet discovered a mineral deposit, but is only searching for one, albeit with good prospects for success. No matter how bright those prospects may be, the Department argues, they are not a substitute for actual discovery of the deposit itself. In the Department's view, the "prudent man" test comes into play only after a mineral deposit has been discovered, not before; and it is then applied to determine whether the discovered deposit is "valuable." [3] The Department held that while the evidence shows that further expenditures are justified in exploration for a mineral deposit, what is required is discovery of a mineral deposit of such quality and quantity that further expenditures are justified in the development of a profitable mine.[4]

We drew the same distinction in Henault Mining Co. v. Tysk, 419 F.2d 766 (9th Cir. 1969). In that case the claim was adjacent to property on which the Homestake formation had been extensively mined for gold. The Homestake formation dipped toward the claim for which a patent was sought, and outcropped beyond it. Dikes containing some mineral values surfaced within the boundaries of the claim. These dikes were thought to have originated below the Homestake formation and to have penetrated that formation, carrying minerals from the formation to the surface. Valuable ore was expected to be found where the dikes intersected the Homestake formation. Experts testified that the presence of valuable mineral deposits at these points was so probable that in excess of $150,000 should be spent in drilling shafts to reach them.

3. The Hearing Examiner wrote:
   The prudent man rule is not an alternative to the substantive provision of the mining laws requiring the discovery of a valuable mineral deposit. The rule is applicable only in the determination of whether a particular deposit is valuable. In this case, the further expenditure of labor and means would not be directed toward the development of a deposit which has been found but would be directed toward the finding of a deposit which the evidence indicates might be found and could be developed.

4. On appeal the Assistant Solicitor wrote:
   The most that can be said from this evidence, and all that the appellants have asserted, is, as observed by the hearing examiner, that the values of the minerals which have been found are sufficient to induce further exploration. Thus, when appellants assert that "a prudent man would be justified in expending further time and effort with a reasonable prospect to develop a paying mine," it is clear that they mean that a prudent man would be justified in expending further time and effort in *exploring* for minerals with a reasonable prospect of *finding* a mineral deposit which could be expected to lead to the development of a paying mine (emphasis in original).
   Appellant points out that the Department's finding is misstated in a concluding paragraph of the district court's opinion. It is evident from the opinion as a whole, however, that the district court understood the distinction drawn by the Department and approved it.

The claimant in *Henault* contended that this uncontradicted testimony satisfied the "prudent man" test. We rejected the argument (419 F.2d at 768–769):

> No vein or lode containing valuable mineral deposits has yet been discovered. The dikes that have been discovered through outcroppings simply constitute an indication that a vein or lode, yet unexposed, may exist at depth. A reasonable prediction that valuable minerals exist at depth will not suffice as a "discovery" where the existence of these minerals has not been physically established.

> . . . . . .

> The further exploration by drilling as recommended by Henault's expert is not then in the nature of development of a discovered lode. It is a search for values not yet discovered, the discovery of which would justify development.

> Henault's "prudent man," then, is not a prudent mine developer but a prudent prospector (footnote omitted).[5]

Appellant seeks to distinguish *Henault* on the ground that while no veins had been discovered in *Henault*, veins have been discovered here. Appellant contends that these veins, admittedly containing some gold and silver, constitute the required mineral deposit. Appellant argues that he is now "searching for ore shoots, zones of enrichment, within the mineral deposits (veins) which have already been discovered," whereas in *Henault*, "the target was not [a] deeper enriched zone in an already exposed structure but a different . . . mineral deposit altogether, which had not yet been physically encountered on the claims." Appellant contends that tunneling or sinking into the veins on these claims, as uniformly recommended by the witnesses, would not be "exploration" to "discover" a "valuable mineral deposit," but would be "development" of an already discovered deposit into a paying mine.

But a mineralized vein is not the equivalent of a deposit of mineable ore. Such a vein may not contain material of substantial value. In this case, as the Department pointed out, "[i]t is nowhere suggested that any quantity of material of the quality of the vein matter thus far disclosed would constitute a mineable body of ore. The evidence does not, in fact, establish any mineral quality of any consistent extent. Although appellants have found ore *samples* with indicated values exceeding $70 per ton, the record does not support a finding that they have found a *deposit* yielding ore or that quality, or of any other quality, the exploitation of which may be contemplated. The evidence of record indicates that the values thus far found are spotty, and appellants do not argue otherwise" (emphasis in original).

The Department held, and we agree, that there is "no difference between the showing of isolated mineral values, not occurring in a vein, which only suggests the existence of a valuable mineral deposit within the limits of the claim and the showing of isolated values occurring in a vein which only suggests the possible existence of a valuable mineral deposit in the course of the vein. That which is called for in either case is further exploration to find the deposit supposed to exist." *See also* Converse v. Udall, *supra*, 399 F.2d at 619, 622.

Appellant argues that in practical effect this approach nullifies the "reasonable anticipation" aspect of the "prudent man" test, and is inconsistent with the rule that "proved ability to mine the deposit at a profit need not be shown." Adams v. United States, *supra*, 318 F.2d at 870. We do not agree. Room remains after discovery of the mineral deposit for application of the principle that the claimant need only show a reasonable prospect that a profitable mine will be developed. The margin between

---

5. *See also* Chrisman v. Miller, 197 U.S. 313, 320, 323, 25 S.Ct. 468, 49 L.Ed. 770 (1905);

Converse v. Udall, 399 F.2d 616, 623 (9th Cir. 1968).

a valuable mineral deposit and a profitable mine may be substantial. As the Department said, "Where ore has been found, the likelihood that ore of the quality found, or of any mineable quality, will continue remains a matter for speculation, and, until a mineral deposit has been exploited through actual mining operations, its true value will remain a matter of uncertainty." [6]

The reason for accepting less than demonstrated profitability as a condition to patentability is to encourage the investment of capital in the development of mineral resources.[7] No doubt it would further that purpose to offer the incentive of patentability to "prudent" prospectors as well as "prudent" mine developers. But there are other considerations. A patent passes ownership of public lands into private hands. So irrevocable a diminution of the public domain should be attended by substantial assurance that there will be a compensating public gain in the form of an increased supply of available mineral resources. The requirement that actual discovery of a valuable mineral deposit be demonstrated gives weight to this consideration.

Denial of a patent does not bar a claimant from continuing the search for a valuable mineral deposit; it only withholds passage of title until that discovery is made.[8]

Affirmed.

---

6. The Assistant Solicitor continued:

Thus, the opinions of experts, based upon knowledge of the geology of the area, the successful development of similar deposits on adjacent mining claims, deductions from established facts—in short, all of the factors which the Department has refused to accept singly or in combination as constituting the equivalent of a discovery—may be, and as a practical matter must be, accepted in determining whether or not a prudent man would be justified in the expenditure of his means with a reasonable anticipation of developing a valuable mine. However, while inference may be relied upon to establish the *extent* of a particular mineral deposit, it may not be relied upon to establish the *existence* of that deposit. The showing thus far made with respect to the claims in question, allowing maximum credibility to appellants' factual allegations, would require reliance . upon inference to establish the existence of an ore body as well as its quantity and quality, and all that appellants have shown is a possibility that valuable mineral deposits may exist within the limits of the claims (*emphasis in original*).

7. As stated in Castle v. Womble, 19 Interior Dec. 455, 457 (1894):

to hold otherwise would tend to make of little avail, if not entirely nugatory, that provision of the law whereby "all valuable mineral deposits in lands belonging to the United States . . . . are . . . declared to be free and open to exploration and purchase." For, if as soon as minerals are shown to exist, and at any time during exploration, before the returns become remunerative, the lands are to be subject to other disposition, few would be found willing to risk time and capital in the attempt to bring to light and make available the mineral wealth, which lies concealed in the bowels of the earth, as Congress obviously must have intended the explorers should have proper opportunity to do.

8. In closing the opinion for the Department on appeal, the Assistant Solicitor stated:

One other point merits some comment. Since the decision in United States v. Kenneth F. and George A. Carlile, 67 I.D. 417 (1960), the Department has consistently held that the rejection of an application for patent to a mining claim is necessarily a determination that the claim is invalid. This does not necessarily limit a mining claimant in his right to continue to explore for minerals. If the land is still open to mining entry, as it appears to be here, the claimant is free to relocate his claims and proceed with his efforts to find a valuable mineral deposit. The determination that appellants' claims are invalid is simply a finding that no rights have been initiated against the United States by virtue of the appellant's location of the claims and that, if any rights are to be obtained, they must be obtained through a discovery made subsequent to the determination that the existing claims are not valid. Such rights, of course, must be initiated in accordance with the terms and limitations now governing the location of mining claims.