**Robert B. LARA, Plaintiff-Appellant,**

v.

**The SECRETARY OF the INTERIOR OF the UNITED STATES of America, Defendant-Appellant.**

**No. 86–3954.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1987.

Decided July 8, 1987.

Richard F. Lancefield, Portland, Or., for plaintiff-appellant.

Vicki L. Plaut, F. Henry Habicht II, Charles H. Turner, James L. Sutherland, Alan Brenner, Dirk D. Snel and Vicki L. Plaut, Washington, D.C., for defendant-appellant.

Before ANDERSON, FARRIS and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Robert Lara appeals a judgment invalidating two mining claims and half of a third claim. Lara contends that the administrative decisions affirmed by the district court are not supported by substantial evidence and are based on improper legal standards.

## I

## BACKGROUND

Lara purchased two twenty-acre placer mining claims, Madeline No. 1 and Madeline No. 2, in southern Oregon in 1971. In 1973, this land was withdrawn from the operation of the federal mining laws and is thus no longer subject to mineral entry. Lara purchased the twenty-acre Sunshine claim in 1975. The northern half of the Sunshine claim had been withdrawn from mineral entry in 1971.

In 1977, Paul Boswell, a Forest Service mining engineer, took mineral samples from all three claims. He reported that none of the claims contained mineral "discoveries." A mining claimant has the right to possession of a claim only if he has made a mineral discovery on the claim. On the basis of Boswell's 1977 tests, the Forest Service filed administrative complaints contesting the validity of the three claims. However, after tests were performed at Lara's request in March 1979, the Forest Service conceded that a discovery existed in the southwest corner of the Sunshine claim.

An administrative law judge (ALJ) held a hearing in Portland, Oregon on July 30, 1979. The ALJ held a second hearing in October 1979 to permit Lara to testify. On September 8, 1980, the ALJ issued an opinion finding the Madeline claims invalid for lack of a mineral discovery. The ALJ also found the northern half of the Sunshine claim invalid under the ten-acre rule. The ALJ did not reach the other allegations in the Forest Service complaint.[1]

Lara appealed to the Interior Board of Land Appeals (IBLA). The IBLA affirmed the ALJ's decision. 67 IBLA 48 (1982). Upon reconsideration, the IBLA affirmed its earlier decision and delineated the invalid portion of the Sunshine claim. 80 IBLA 215 (1984).

Lara then sought judicial review. The government counterclaimed, seeking an order that Lara vacate the claims and remove all structures on them. On May 1, 1986, the district court affirmed the IBLA and granted the relief requested in the counterclaim. 642 F.Supp. 458 (D.Or.1986). A May 1, 1986 order required Lara to vacate the claims and remove all structures from them within 120 days of the date of the order.

Lara appealed on June 24, 1986. On July 3, 1986, the district court entered its judgment. The judgment reiterated the May 1, 1986 decision and order. It also authorized the issuance of a writ of assistance pursuant to Fed.R.Civ.P. 70.

## II

## DISCUSSION

A. *Sunshine Claim*

1. Ten-Acre Rule

Lara argues that the ten-acre rule applies only to placer claims located by associations, groups of two or more persons, not to claims located by individuals. He also contends that the IBLA improperly divided the Sunshine claim by drawing a line inconsistent with public land subdivision lines.

(a) Legal Basis for Ten-Acre Rule

Under 30 U.S.C. § 35, "no [placer] location shall include more than twenty acres for each individual claimant." A claimant may gain possessory rights to a twenty-acre location if he makes one mineral discovery on the location. 43 C.F.R. § 3842.1–1. However, the Interior Department (Department) has "established a rule that, when challenged, the claimant must show that each ten-acre tract on his claim contains a valuable mineral." *McCall v. Andrus*, 628 F.2d 1185, 1188 (9th Cir.1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1700, 68 L.Ed.2d 197 (1981). Each ten-acre tract must be "mineral in character." *Id.*

■ Lara does not contest the validity of the ten-acre rule but contends it is inapplicable to an individual's placer claim. Interpretation of an administrative rule is a question of law which we review de novo. *Cf. United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We give great deference, however, to the interpretation of the Department as it created the rule. *See Jewett v. Commissioner*, 455 U.S. 305, 318, 102 S.Ct. 1082, 1090, 71 L.Ed.2d 170 (1982) (Commissioner's interpretation of his own regulation is entitled to great respect).

Lara contends that the ten-acre rule applies only to an association's placer claim, which may be as large as 160 acres, 30 U.S.C. § 36, and only in patent proceedings. Whether the ten-acre rule applies to an individual's twenty-acre placer claim is a question of first impression.

■ As the district court noted, the policy behind the rule applies equally to individual and association placer claims. 642 F.Supp. at 464. We stated that policy in *McCall*, "[c]onsidering all the statutes relating to mining claims it seems clear that it was not their purpose to permit the entire area allowed as a placer claim to be acquired as appurtenant to placer deposits

---

**1.** The Forest Service had also complained that Lara used the claims for other than bona fide mining purposes and that Lara had failed to comply with annual assessment requirements for the Madeline claims.

irrespective of their extent." 628 F.2d at 1188 (quoting *American Smelting & Refining Co.*, 39 L.D. 299, 301 (1910)). The fact that 30 U.S.C. § 35 permits an individual to locate a maximum of twenty acres, does not mean Lara has a right to possess twenty acres if only ten contain placer deposits. Dicta in several cases support this application of the ten-acre rule. *See American Smelting and Refining Co.*, 39 L.D. 299, 301 (1910); *Ferrell v. Hoge*, 29 L.D. 12, 13 (1899); *Laden v. Andrus*, 595 F.2d 482, 491 (9th Cir.1979). Moreover, contrary to Lara's contention, use of the rule is not restricted to patent proceedings. *See, e.g., United States v. Nickol*, 47 IBLA 183 (1980).

Lara also argues that the ten-acre rule violates 30 U.S.C. § 35 which requires similar treatment of lode and placer claims. Lara misinterprets 30 U.S.C. § 23 to contend that it permits an individual to locate a lode claim of twenty acres regardless of the size of the lode. Section 23 limits the length of lode claims to the lode's length and permits the claim to extend 300 feet to either side of the lode. Thus, it is no support for Lara's assertion that one discovery entitles him to possession of a twenty-acre placer claim regardless of the mineral character of the rest of the claim. Furthermore, the Department rejected this argument in *Ferrell v. Hoge*, 29 L.D. 12, 13–15 (1899).

**(b) Application of the Ten-Acre Rule**

■ Lara also challenges the line drawn by the IBLA to separate the valid and invalid portions of the Sunshine claim. He contends the IBLA abused its discretion because the line is not consistent with public land subdivision lines.

The IBLA divided the Sunshine claim into two square ten-acre parcels. Because the boundaries of the Sunshine claim do not conform to public land subdivision lines,[2] the IBLA was unable to use those lines to divide the claim into two ten-acre parcels. The IBLA reasoned that "[i]n applying the ten-acre rule, each claim must be subdivided along the axis in which it was laid out on the ground." 80 IBLA at 216.

This division furthers the policy behind the ten-acre rule by permitting Lara to keep only that part of the claim that is mineral in character. And, as the Secretary points out, Lara's interpretation would penalize those who have located claims in conformance with public land subdivision lines as required by statute. 30 U.S.C. § 35. Therefore, the district court properly deferred to the agency's expertise to find the line was proper. 642 F.Supp. at 464; *see Multiple Use, Inc. v. Morton*, 504 F.2d 448, 452 (9th Cir.1974) (a court may not substitute its judgment for that of the agency which has expertise in the field).

**2. Due Process**

Lara contends that he did not have notice that the government was contesting the validity of the northern half of the Sunshine claim. The Administrative Procedure Act provides that "[p]ersons entitled to notice of an agency hearing shall be timely informed of . . . the matters of fact and law asserted." 5 U.S.C. § 554(b). "The purpose of [this section] is satisfied, and there is no due process violation if the party proceeded against 'understood the issue' and 'was afforded full opportunity' to justify his conduct." *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1435 (9th Cir.) (quoting *Golden Grain Macaroni Co. v. FTC*, 472 F.2d 882, 885 (9th Cir.1972)), *cert. denied*, —— U.S. ——, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986).

The Forest Service's complaint was based on Boswell's 1977 mineral tests which revealed insufficient gold in the Sunshine claim. Boswell's 1979 examination revealed a mineral discovery in the southwest corner of the claim. Boswell issued a report to this effect shortly before the July 1979 hearing. At the hearing, the Forest Service conceded that the southwest portion of the claim was supported by a dis-

---

**2.** The Sunshine claim itself does not conform to the public land subdivision lines as required by 30 U.S.C. § 35. The claim may be proper, however, as 43 C.F.R. 3842.1–5 permits a placer claim to vary from the public land surveys if to properly place the claim it would overlap a prior located claim. Lara contends, and the Secretary does not contest, that this is the case.

covery, but it contended the northern portion was not valid mineral ground. The ALJ then stated, "Well, of course, each legal subdivision [of ten acres] has to be considered when it's [a] placer [claim]." The ALJ went on to inform Lara's attorney, Murray, that "I think the Government is contending that it's not mineral in character. . . ." Murray responded, "That 10–acre subdivision rule only applies to association placers, not to an individual placer." The ALJ then stated that Murray's statement was not his "understanding of the law" and that Murray would "have an opportunity to brief that question."

■ This colloquy reveals that Lara, through his attorney, had notice that both the legal issue of the applicability of the ten-acre rule and the factual issue of the mineral character of the northern portion of the claim were at issue. Lara had three months between the July and October hearings to prepare these issues. Lara has not contended this was inadequate preparation time. Therefore, his due process claim fails.

### 3. Substantial Evidence

■ Lara's final contention regarding the Sunshine claim is that there is insubstantial evidence to support the administrative finding that the northern half of the claim is not mineral in character. We examine the entire record to determine if the administrative decision is supported by substantial evidence. *Multiple Use*, 504 F.2d at 452. Proof that land is mineral in character may be evidenced "by geological inference coupled with market availability." *McCall*, 628 F.2d at 1188. Lara had the burden to show that the land contained minerals of "such quality and quantity as would render their extraction profitable." *Id.*

■ Lara argues that geological inference supports his contention that the northwest portion of the claim is mineral in character. Lara failed to raise this argument before the ALJ or the IBLA. He made the geological inference argument for the first time in his Motion to Reverse and Vacate Administrative Decisions under

Judicial Review before the district court. Lara's failure to raise this geological inference argument at the administrative level precludes our consideration of it, particularly as it involves factual questions peculiarly within the Department's expertise. *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) ("judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise"); *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985); 2 *Am. L. of Mining* § 50.11[3] (2d ed. 1984) ("the scope of review by a federal court of a determination by the Department of Interior is extremely limited and restricted to the record before the agency").

■ Boswell's expert testimony that the northern half of the Sunshine claim was not mineral in character satisfied the government's prima facie burden of proof. *Id.* at 1189. Lara failed to rebut the government's prima facie case. He presented some evidence regarding the Sunshine claim at the October 1979 hearing. Lara testified that he had sold gold from Elliot Creek, which runs through the southern and northern halves of the Sunshine Claim, to a jeweler. Lara introduced two vials of gold and several gold rings all of which he claimed were Elliot Creek gold. However, Lara never specified what part of Elliot Creek supplied the gold. Throughout the administrative proceedings he never argued that the northern part of the Sunshine claim was mineral in character. Therefore, the administrative decision is supported by substantial evidence.

### B. *Madeline Claims*

Lara argues that the agency applied the wrong legal standard to find the Madeline claims lacked a discovery. He also contends the administrative findings are not supported by substantial evidence.

### 1. Legal Standard.

In 1905 the Supreme Court adopted the Land Department's test for proof of a dis-

covery: " 'Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met.' " *Chrisman v. Miller,* 197 U.S. 313, 322, 25 S.Ct. 468, 470, 49 L.Ed. 770 (1905) (quoting *Castle v. Womble,* 19 L.D. 455, 457 (1894)). The Supreme Court refined this prudent person test in *United States v. Coleman,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). The · Court held that "profitability is an important consideration in applying the prudent-man test." *Id.* àt 602, 88 S.Ct. at 1330. We have used consistently the prudent person test and its "complement" *Coleman*'s marketability test to define a discovery. *See, e.g., Rodgers v. Watt,* 726 F.2d 1376, 1379 (9th Cir.1984); *Melluzzo v. Morton,* 534 F.2d 860, 862 (9th Cir.1976); *Multiple Use,* 504 F.2d 448; *Verrue v. United States,* 457 F.2d 1202, 1203 (9th Cir.1972); *Barrows v. Hickel,* 447 F.2d 80, 82 (9th Cir.1971); *Converse v. Udall,* 399 F.2d 616, 619–21 (9th Cir.1968), *cert. denied,* 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 (1969).

Lara argues that the ALJ and IBLA erred by requiring a showing of profitability. Lara contends that he need not make a full showing of marketability because he mines a precious metal. Lara relies on *Converse* in which we held that for precious metals a claimant need not prove he will in fact develop a profitable mine. 399 F.2d at 622. As the district court noted, this statement is difficult to reconcile with *Coleman.* The Supreme Court in *Coleman* required a present showing of profits and it specifically held the marketability test applicable to precious metals, 390 U.S. at 603, 88 S.Ct. at 1330, although the case involved common materials.

Few cases decided since *Converse* have used or addressed *Converse*'s "sliding scale" application of the marketability test. The district court points out that in *Rodgers,* 726 F.2d 1376, a case involving semi-precious stones, we did not mention *Converse,* 642 F.Supp. at 462. However, in *Multiple Use,* 504 F.2d at 452, by adopting

the district court's decision, we held that "[i]t need not be proved that the claim can in fact be operated at a profit, but the evidence as to costs of mining may be considered in determining whether a person of ordinary prudence would be justified in the further investment of labor and capital. *Converse v. Udall, supra.*" 353 F.Supp. 184, 190–91 (D.Ariz.1972). Although the district court in *Multiple Use* did not expressly restrict this statement to precious minerals, the case involved a claim of valuable gold deposits.

In apparent contradiction to this statement from *Multiple Use* is our holding in *Ideal Basic Industries, Inc. v. Morton,* 542 F.2d 1364, 1369 (9th Cir.1976), that "[t]o meet this [marketability] test it must be established that the limestone *presently* could be extracted and marketed at a profit." (Emphasis in original). These cases can be reconciled by the distinction Lara makes between precious minerals and common materials. *Multiple Use* involved gold; *Ideal* involved limestone. The Supreme Court in *Coleman,* recognizing this distinction, stated that "the marketability test is usually the critical factor in cases involving nonmetallic minerals of widespread occurrence" while "precious metals which are in small supply and for which there is a great demand, sell at a price so high as to leave little room for doubt that they can be extracted and marketed at a profit." 390 U.S. at 603, 88 S.Ct. at 1330.

■ Thus, we hold that Lara need not have shown profitability at the date of withdrawal or at the date of the hearing. Rather, evidence of the costs and profits of mining the claims should have been considered in determining "whether a person of ordinary prudence would be justified in the further investment of labor and capital." *Multiple Use,* 353 F.Supp. at 190–91. The ALJ erred in stating that the marketability test requires "a showing that the mineral in question can be presently extracted, removed, and marketed at a profit." The IBLA's similar statement was also error. 67 IBLA at 57.

### 2. Substantial Evidence

Although we review the entire record to determine if substantial evidence supports the agency decisions, we defer to the agency's expertise in determining what constitutes a discovery. *Cf. Multiple Use,* 504 F.2d at 452. The government bears the initial burden of presenting a prima facie case that the claims are invalid. *Rodgers,* 726 F.2d at 1380. The burden then shifts to the claimant to show by a preponderance of the evidence that a valuable mineral deposit has been discovered. *Id.* Because the right to prospect for minerals ceases on the date of withdrawal, *see Lockhart v. Johnson,* 181 U.S. 516, 520, 21 S.Ct. 665, 666, 45 L.Ed. 979 (1901), a discovery must have existed at the date of withdrawal as well as at the date of the hearing. *Rodgers,* 726 F.2d at 1379.

Boswell testified that he took samples from the Madeline claims in 1977 and 1979. He took the 1979 samples at Lara's request and from the areas Lara specified. Using 1973 and 1979 gold prices, Boswell opined that both Madeline claims lacked valuable mineral discoveries in 1973 and at the present time. Present samples may not be sufficient to establish a prima facie lack of discovery at the date of withdrawal in 1973. *See Charlestone Stone Products Co. v. Andrus,* 553 F.2d 1209, 1213–15 (9th Cir.1977), *rev'd on other grounds,* 436 U.S. 604, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978). *But see McCall,* 628 F.2d at 1189 (unlike situation in *Charlestone,* claimant had no evidence to contradict government's). Nonetheless, Boswell's expert opinion meets the government's prima facie burden that no discovery presently exists. *Hallenbeck v. Kleppe,* 590 F.2d 852, 859 (10th Cir.1979); *McCall,* 628 F.2d at 1189.

Lara's evidence consisted solely of his testimony and of a number of photographs of people mining on the Applegate River, which runs through both Madeline claims, and of Boswell sampling the claims. The photographs of Boswell were an attempt to support Lara's allegations that Boswell's sampling methods were inadequate. Lara presented no documented evidence of his own gold recoveries or of others' recoveries he claimed to have examined. Lara simply testified that he and other miners were recovering enough gold from the Applegate River to profit from their labors.

The government mineral examiner has no duty to search for a discovery. *Hallenbeck,* 590 F.2d at 858–59. The claimant in *Humboldt Placer Mining Co. v. Secretary,* 549 F.2d 622, 624 (9th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 125, 54 L.Ed.2d 97 (1977), similarly criticized the government's exploratory work. This court pointed out that the mining claimant, not the government, bears the ultimate burden of proof. *Id.* Rather than criticize the government's testing methods, the claimant must produce evidence to rebut the government's case. *Russell v. Peterson,* 498 F.Supp. 8, 10 (D.Ore.1980). Lara's photographs and testimony are insufficient to rebut the government's proof of mineral samples and Boswell's testimony.

Even though the ALJ and IBLA applied an improper standard by requiring proof of profitability, the district court correctly held that "the evidence and findings here would satisfy *Converse.*" 642 F.Supp. at 462. Lara presented insufficient evidence to meet even this prudent person test. Thus, the IBLA's decision is supported by substantial evidence.

### C. Secretary's Counterclaim

The district court ordered Lara to vacate the mining claims and remove all the structures from them. 642 F.Supp. at 465–66. Lara argues that the district court could not order him to vacate the claims until the litigation finally concluded. Lara's argument is meritless since he applied for and was granted a stay of the district court's decision pending appeal. The district court granted the application on the condition that Lara post a bond. Lara posted the bond and he does not now contest its imposition. Thus, the order to vacate the claims has been stayed pending this appeal and Lara's claim is meritless. *See Barrows v. Hickel,* 447 F.2d 80, 84 (9th Cir.1971).

### D. Writ of Assistance

Lara's final contention is that the district court lacked jurisdiction to permit

the government to obtain a writ of assistance. After Lara filed his notice of appeal, the district court entered its judgment which included an authorization for a writ of assistance pursuant to Fed.R.Civ.P. 70. Even if Lara's prejudgment notice of appeal divested the district court of jurisdiction, its authorization was proper. The district court may issue orders pending appeal to enforce its judgment. Fed.R.Civ.P. 62(c); *Hoffman v. Beer Drivers' & Salesmen's Local Union No. 888,* 536 F.2d 1268 (9th Cir.1976).

## III

## CONCLUSION

The IBLA properly applied the ten-acre rule to invalidate the northern half of the Sunshine claim. Lara had adequate notice that the ten-acre rule was at issue and substantial evidence supports its use to invalidate the northern half of the claim. Substantial evidence also supports the invalidation of the Madeline claims under the proper legal standards. Lara's challenges to the district court's order that Lara vacate the claims must fail.

˙ Therefore, the district court's judgment is **AFFIRMED.**