**Reed GILMORE, Plaintiff–Appellant,**

v.

**Manuel LUJAN, Secretary of the Interior, Defendant–Appellee.**

**No. 89–16407.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1991.

Decided Nov. 1, 1991.

Laura Lindley, Poulson, Odell & Peterson, Denver, Colo., for plaintiff-appellant.

Richard Stewart, Asst. Atty. Gen. and Andrew C. Mergen, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant-appellee.

Before NELSON, KOZINSKI and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Appellant Reed Gilmore appeals a rejection of his oil and gas lease offer by the Bureau of Land Management ("BLM"). BLM refused the offer because it did not contain a personal, handwritten signature and the Interior Board of Land Appeals ("IBLA") upheld that rejection, also denying appellant's estoppel claim. The district court summarily affirmed the IBLA's decision. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of a failure of our postal system. Reed Gilmore filed an oil and gas application for Parcel NV–148 in the June 1987 simultaneous filing of the BLM.[1] His application was selected in the computerized random drawing. BLM sent

---

**1.** For a description of the simultaneous filing system in effect at the time this case was filed, *see Cranston v. Clark,* 767 F.2d 1319 (9th Cir. 1985). The Mineral Leasing Act was significantly amended by the Federal Onshore Oil and Gas Leasing Reform Act of 1987. 30 U.S.C. § 181 note (1990). That law provided for the adjudication of lease applications and offers pending at the time of its enactment under prior law and regulations. 30 U.S.C. § 226 (1990).

its decision, dated August 26, which stated in part:

> Enclosed is the original and two copies of Form No. 3100–11, "Offer to Lease and Lease for Oil and Gas" for your execution. The applicant (or the applicant's attorney-in-fact, as provided by 43 C.F.R. [§] 3112.6–1(a) and (b) [(1986)]), must manually sign and date each copy on the reverse side of the form.

> All copies of the lease form must be properly executed and filed in this office within thirty (30) days from your receipt of this decision, which constitutes a compliance period. Failure to do so will result in the rejection of your offer without further notice.

The decision was sent certified mail, with a return receipt requested, from the Reno, Nevada, office of the BLM. Gilmore received the decision on August 29, 1987; therefore, to comply with the deadline, he was to file the completed forms no later than September 28, 1987.

Gilmore signed the copies of the lease form and sent them by certified mail from his office in Kimball, Nebraska, with a return receipt requested, to the Reno office on September 21. Gilmore states that his secretary, Debra Bohac, noticed on the morning of the deadline, Monday, September 28, that they had not yet received the return receipt card from the envelope containing the signed forms. Bohac called the Reno office to inquire whether the forms had been received. She spoke with Joan Woodin, Supervisory Land Law Examiner for the Nevada State Office. While the text of the entire conversation is disputed, Woodin did inform Bohac that the forms had not yet arrived.

Bohac states that she then investigated whether Gilmore could travel to Reno that day. She allegedly found no commercial airline that could transport Gilmore to Reno by the close of the BLM's business day. Bohac called Woodin again. Her call was returned, on Woodin's behalf, by Bernita Dawson, a Land Law Examiner in the Reno office. Both parties to this second call agree that Bohac informed Dawson that Gilmore's office would arrange for a telecopied (i.e., "faxed") lease form to be delivered to the Reno BLM office that day, September 28. Bohac also states, "I asked Ms. Dawson if they [BLM] would consider the telecopied signed lease form for acceptance as the signed lease offer and she told me they would." However, Dawson claims that she told Bohac that telecopying "would not do any good because it would merely be a copy and not the original and two copies as required by our August 26, 1987 decision."

Gilmore sent a telecopy to Robert McCarthy, a Reno attorney, who delivered it to the BLM at 11:15 a.m., September 28. The mailed original and copies of the signed lease form were received by the Reno office the next day, September 29. On that day, BLM informed Gilmore that his offer was rejected.

Gilmore appealed the decision, and on January 26, 1989, the IBLA affirmed the BLM's rejection on the grounds that the telecopied lease offer did not bear a personal, handwritten signature as required by 43 C.F.R. § 3122.6–1(a) and § 3102.4 (1986). *Reed Gilmore (On Reconsideration)*, 107 IBLA 37 (1989). The IBLA concluded that Gilmore's "failure to submit the signed lease offer and stipulations within 30 days was a violation of a substantive rule that justified *per se* rejection of the offer." *Id.* at 45. The IBLA also concluded that it did not need to decide the facts of the disputed phone conversations on two grounds: (1) "[p]arties dealing with the Government are chargeable with knowledge of duly promulgated regulations" and therefore Gilmore "knew that the law required his lease offer to be returned to BLM within 30 days and could not have justifiably relied on any possible misstatement by Woodin"; and (2) assuming that Dawson promised to consider the telecopied form, "the only commitment made by BLM was to consider whether the telecopied lease offer constituted a proper lease offer," which BLM did before rejecting it. *Id.* at 45–46.

Gilmore sought judicial review and the United States District Court for the District of Nevada summarily affirmed the

decision on September 14, 1989. Gilmore filed a timely appeal to this court.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo.* *Cranston,* 767 F.2d at 1320. "Determinations by the BLM and the IBLA must be upheld unless arbitrary, capricious, an abuse of discretion, or not in accordance with law." *Nevitt v. United States,* 828 F.2d 1405, 1406 (9th Cir.1987) (citing *Dredge Corp. v. Conn.,* 733 F.2d 704, 707 (9th Cir.1984); 5 U.S.C. § 706(2)(A) (1986)). While the standard of review is narrow, we carefully search the record to determine that "the decision was based on a consideration of the relevant factors." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1970).

## DISCUSSION

For what would seem a minor detail to the uninitiated, there is an abundance of administrative decisions involving the requirement of a holographic signature on lease applications. Of particular significance to this case is *W.H. Gilmore,* 41 IBLA 25 (1979) (no apparent relation to appellant here) published prior to the regulations in effect in this case. W.H. Gilmore, who was the second priority applicant, protested the award of the lease to the first applicant who had used a rubber-stamped signature in his filing. The Board refused Gilmore's petition because the only pertinent regulation in effect at that time, 43 CFR 3102.6-1, (1979) coupled with a prior Board decision, clearly allowed rubber-stamped signatures. The Board admitted administrative headaches would probably result from its decision but stated:

> We fully recognize that our holding in the instant case exposes the Department to another method by which the reasonable efforts of the Department to insure

fair play and compliance with the law can be made more difficult, and we deplore the proclivity of some leasing services to exploit every conceivable loophole in the letter of the regulations without any discernible regard for their spirit and intent. *Id.* at 28–29.

Nevertheless, the Board was compelled to allow the rubber stamped signature. The regulation itself was ambiguous but *Mary I. Arata,* 4 IBLA 201, 78 I.D. 397 (1971) (*Arata I*) had earlier held that such ambiguity must be construed in favor of the applicant. The *W.H. Gilmore* Board commented further that the BLM had not only the right, but the duty, to inquire into individual cases where questions arose regarding the legitimacy of the lease application. *Id.* at 31.

As the result of *W.H. Gilmore,* the BLM promptly amended the regulations. In June 1980, the BLM added 43 CFR 3102.4 which read in part, "[a]ll applications [and] the original offers ... shall be holographically signed in ink by the potential lessee.... Machine or rubber stamped signatures shall not be used." [2]

The BLM regulation was validly promulgated following notice and comment. It gave fair notice to all applicants that failure to comply would result in denial of their applications. Such is the case here. The telefaxed application submitted by appellant was not holographic, and it was created by a machine—both violations of the plain language of the regulation. It was within the discretion of the Secretary not to depart from the regulation in this case.[3]

While in this instance, denial produces a harsh result, a telefaxed signature is a machine produced signature. It is the exact situation the amended regulations sought to address.

2. In 1988, after Gilmore filed his application, § 3102.4 was amended again but its effect is of no consequence to this appeal.

3. In one case, *Jack Williams,* 91 IBLA 335 (1986), the board reversed the denial of an application because it determined that a penciled

signature was good enough. This was simply an example of the board justly exercising its discretion and waiving the strictest adherence to the regulations since the signature was original although not in ink. Here it chose not to be so benevolent. It had that power.

Because appellant had ample notice that only a holographic signature would suffice, his estoppel argument fails as well. Appellant has alleged only that BLM did not tell him that it planned to deny his non-conforming application. For BLM to be estopped from enforcing its own regulations, however, appellant must demonstrate affirmative misconduct on the part of the government which goes beyond a mere failure to inform or assist. *Wagner v. Director, Federal Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir.1988). Gilmore has made no such showing here.

The decision we reach here is compelled by the narrow scope of the court's review of agency decisions. Obviously the equities favor Gilmore, as he is guilty of no omission but use of the United States mails. Eight days for delivery of mail from Nebraska to Nevada far exceeds the time it should take. Indeed, the Pony Express could have covered the distance with time to spare.

Justice Holmes observed that citizens dealing with their government must turn square corners. *Rock Island, Arkansas, and Louisiana Railway Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). Gilmore turned all but the last millimeter, but that millimeter, whose traverse is jealously guarded by the BLM, was his undoing. Relief to Gilmore in this narrow case would expose BLM to no fraud or risk of fraud, as his bona fides are beyond question. If Gilmore and those other few luckless applicants whose documents are stored rather than delivered by the Postal Service are to get any relief, it must come at the hands of the BLM. As shown by this case, those hands are more iron than velvet. We can only suggest to BLM that the body politic would not be put at risk by the granting of relief in these narrow and rare situations.

AFFIRMED.