**John HJELVIK, True Craig, Jr., Plaintiffs–Appellees,**

v.

**Bruce BABBITT, Secretary of the Interior, United States Department of the Interior, Defendant–Appellant.**

No. 98–35340.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1999

Memorandum filed Oct. 27, 1999

Memorandum Withdrawn Dec. 7, 1999

Filed Dec. 7, 1999

Katherine W. Hazard, United States Department of Justice, Washington, D.C., for the defendant-appellant.

Peter T. Stanley, Billings, Montana, for the plaintiffs-appellees.

Before: CANBY, BRUNETTI, and O'SCANNLAIN, Circuit Judges.

**1074**

## ORDER

BRUNETTI, Circuit Judge:

The memorandum disposition filed October 27, 1999, is hereby WITHDRAWN. An opinion is being filed in place of the memorandum disposition.

## OPINION

This appeal involves the review of an administrative proceeding which culminated in a decision of the Interior Board of Land Appeals ("IBLA") finding that fourteen[1] unpatented mining claims held by appellees, John Hjelvik and True Craig, Jr., were null and void for lack of discovery of valuable mineral deposit. The United States District Court for the district of Montana reversed the IBLA's decision. On appeal, the government argues that the IBLA's decision must be affirmed because it is in accordance with federal mining law and supported by substantial evidence. We agree and reverse the district court's summary judgment order.

■ "In reviewing decisions of the IBLA, this court exercises a limited standard of review." *Baker v. United States*, 613 F.2d 224, 226 (9th Cir.1980). We review the case from the same position as the district court and will reverse the IBLA's decision only if that decision is arbitrary, capricious, not supported by substantial evidence, or contrary to law. *See Gilmore v. Lujan*, 947 F.2d 1409, 1411 (9th Cir.1991). To determine whether the IBLA's decision is supported by substantial evidence, we carefully search the entire record to determine whether it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir.1992), and whether it demonstrates that the "deci-sion was based on a consideration of the relevant factors," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

## I.

■ The validity of a mining claim depends on the discovery of a valuable mineral deposit. *See* 30 U.S.C. § 22. "[I]n order to qualify as 'valuable mineral deposits,' the discovered deposits must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine....'" *United States v. Coleman*, 390 U.S. 599, 602, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968) (quoting *Castle v. Womble*, 19 L.D. 455, 457 (1984)). In *Coleman*, the Supreme Court refined the prudent person test and held that "profitability is an important consideration in applying the prudent-man test." *Id.* The supplemental marketability test requires a showing that the mineral deposit can be extracted, removed, and marketed at a profit. *See Baker*, 613 F.2d at 225–26. Where a claim is located on land withdrawn from mineral entry pursuant to the Wilderness Act, a claim must be supported by a discovery of a valuable mineral deposit at the time of withdrawal in order to qualify as an existing right under Section 4 of the Wilderness Act. *See Wilderness Society v. Dombeck*, 168 F.3d 367, 375 (9th Cir.1999). Additionally, a claim must be shown to be valid as of the time of the contest hearing. *See United States v. Beckley*, 66 IBLA 357, 361 (1982).[2]

■ When the government contests the validity of a mining claim for lack of a discovery, it bears the initial burden of going forward with sufficient evidence to

---

1. The claimants did not appeal the ALJ's decision that three of the claims were invalid for lack of exposure of mineralization in place. Thus, the instant appeal concerns only eleven of the fourteen claims originally contested.

2. Ten of the eleven claims at issue here lie all or in part within the Absaroka–Beartooth Wilderness Area. One contested claim, the Bug No. 1, is located entirely outside the Wilderness Area and thus only requires a showing of validity at the time of the contest hearing.

establish a prima facie case that no discovery of a valuable mineral deposit has been made. *United States v. Williamson and Lapine Pumice Co.,* 45 IBLA 264, 278 (1980). The IBLA has explained that:

prima facie case means that the case is adequate to support the Government's contest of the claim and that no further proof is needed to nullify the claim. The Government does not have to negate the evidence presented by the mining claimant. If the Government shows that one essential criterion of the test was not met, it has established a prima facie case.

*Id.* (internal citations omitted).

■ Once the government establishes a prima facie case, the burden of proof devolves to the claimant who must refute by a preponderance of the evidence the government's case. *Lara v. Secretary of Interior,* 820 F.2d 1535, 1542 (9th Cir.1987). The claimant does not have to establish all the necessary elements required for a valid discovery, but rather only needs "to preponderate on the issues raised by the evidence." *United States v. Crawford,* 109 IBLA 264, 268 (1989).

The principal issue here is whether the government went forward with sufficient evidence to establish that the appropriate measure of resources for the purpose of determining the validity of contested claims was 16,840 short tons. In their brief to this court and at oral argument, the claimants have not contested the IBLA's determination that they could not mine 22,340 short tons of chromite, the amount of resources found by the IBLA to be in place on the contested claims,[3] at a profit. Nor have the claimants posited that the IBLA erred in finding that they did not preponderate on the issue of the proper measure of resources found on the claims. Instead, they argue that the government's evidence did not raise the issue

of the proper measure of resources for determining the validity of the claims and that they therefore did not have the burden of establishing the appropriate measure of resources at the contest hearing. Thus, if substantial evidence supports the IBLA's determination that the government made a prima facie case that the proper measure of the chromite on the contested claims was 16,840 short tons, we must uphold the IBLA's decision.

■ Where the physical presence of a mineral deposit on a claim has been established, proof that minerals exist on the claims sufficient to justify discovery may be evidenced by geological inferences. *See, e.g., Barton v. Morton,* 498 F.2d 288, 292 n. 6 (9th Cir.1974); *United States v. New York Mines,* 105 IBLA 171, 191 (1988). Geological inferences can be used to infer sufficient quantity of similar quality mineralization beyond the actual exposed areas where the values of the exposed deposits on claims owned or controlled by claimants are high and relatively consistent. *United States v. Freezor,* 74 IBLA 72 (1983). Moreover, where there is evidence of exposed mineral deposit on each claim, a series of contiguous claims may be considered as a group when determining whether a prudent person would be justified in expending resources on developing a mine on all of the contiguous claims. *New York Mines,* 105 IBLA at 191.

At the initial contest hearing, the government's expert witness Barry Burkhardt, a certified mineral examiner for the Forest Service, testified that, based on field examinations, sampling of minerals on the claims, and a review of the pertinent literature, he estimated that there existed approximately 16,840 short tons of chromite on the contested claims. Based on a 1946 report prepared by H.L. James, he estimated that the chromite deposits in the

---

3. The IBLA found that the claimants were entitled to include 5,500 short tons of chromite stock piled on one of the claims to the amount of indicated reserves to determine the

marketability of the claims' mineral resources. The government has not challenged this ruling.

entire mining district equaled 112,000 short tons. Burkhardt also testified that the deposits in the mining district are podiform and that such deposits are "very irregular," "randomly scattered and vary in size and dimension." The James report also described the mineral deposits as being "pod like in form."

The government submitted two mining reports prepared by Burkhardt which concluded that the cost of mining the claims would exceed the market value of the refined chromite. One report contained two cost estimates: one assuming that only the indicated reserves found on the contested claims would be mined (16,840 short tons) and the other that all the estimated chromite deposits in the district (112,000 short tons) could be mined. The second, earlier report only analyzed the profitability of mining all the chromite found in the district.

At the close of the government's presentation of evidence, the claimants made a motion to dismiss averring that the government had failed to make a prima facie case of invalidity. The Administrative Law Judge took the motion under advisement and ordered supplemental briefing. In its brief in opposition to the motion to dismiss, its reply brief in opposition to the motion to dismiss and its post-hearing brief, the government expressly argued that the claimants were not entitled to rely on the estimated reserves for the entire mining district in order to establish a valid discovery because there was no evidence in the record that the additional mineralization on nearby claims was properly located or was of sufficient quantity and quality to be considered as part of a mining group. The government also argued that the estimated size of the entire district mining reserve was too speculative to support a geologic inference of 112,000 tons of chromite.

■ Substantial evidence supports the IBLA's determination that the government made a prima facie case that the resources in place on the claims totaled 16,840 short tons and that the claimants were not entitled to rely on a geologic inference to establish a 112,000 ton reserve. Because the claimants failed to rebut this evidence, the IBLA did not err in finding that the established measure of resources for the purpose of determining the validity of the claims was 22,340 short tons and that the claims did not contain minerals of sufficient quantity or quality to constitute a discovery of a valuable mineral.

## II.

■ When the government makes a prima facie case that no exposed mineral-in-place has been located on a claim, the claimant has the burden of showing by a preponderance of the evidence that in place mineralization exists on the claim. *Lara*, 820 F.2d at 1542. In order to meet its burden, the claimant must do more then criticize the government's testing methods as "the government mineral examiner has no duty to search for a discovery." *Id.* Substantial evidence supports the IBLA's finding that the claimants here failed to offer sufficient evidence to rebut the government's case that there was no mineral-in-place on the Siegfriedt No. 3 claim.

## III.

Substantial evidence supports the IBLA's determination that the claimants failed to rebut the government's prima facie case that there was no discovery of a valuable mineral deposit on the contested claims. We therefore reverse the district court's summary judgement order and affirm the IBLA's decision holding the eleven claims null and void.

**REVERSED.**

O'SCANNLAIN, Circuit Judge, specially concurring:

I concur. I do so, however, only because I am forced to by the strict standard of this Court's review. As the Court right-

ly points out, we can reverse the Interior Board of Land Appeals ("IBLA") only if its decision is "arbitrary, capricious, not supported by substantial evidence, or contrary to law." Op. at 1074 (citing *Gilmore v. Lujan*, 947 F.2d 1409, 1411 (9th Cir. 1991)). Perhaps our system of administrative law might possibly benefit from a similar constraint upon the IBLA in its review of decisions rendered by administrative law judges ("ALJs").

I acknowledge that IBLA may conduct a *de novo* review of cases that have already been decided by an ALJ; nevertheless, a system of review that pays no respect to the findings of those decisionmakers most intimate with the matter is ripe for abuse. A party that relies upon the arguments it and its opponent have made in the initial forum may be sandbagged by entirely new contentions raised before the IBLA if that tribunal deems them admissible. Many close cases will allow the IBLA to make such a fatal decision without necessarily triggering the egregious breach required by *Gilmore* for this Court to remedy the misstep. The case before us may be one such instance.

In this case, the ALJ stated specifically that the government "made a case for approximately 112,000 short tons of indicated and inferred reserves of mineral bearing in excess of 20 percent chromite in the immediate area on these and other claims held by [Hjelvik]." Based on that case, the ALJ concluded that Hjelvik was "entitled to a finding of these amounts of reserves being present on the claims at a minimum." Furthermore, in arguing the marketability issue, the government used a 1946 report by H.L. James to support its arguments on what method of mining could be used on these claims, and the ALJ pointed out that the James report was a source of the 112,000 ton figure. James postulates that the approximate quantity of "inferred chromite" is an amount "not to exceed 100,000 metric tons." When converted, 100,000 metric tons roughly equals 112,000 short tons.

Turning to the testimony of Hjelvik's expert, James Border, the ALJ recounted that Border prepared a marketability report based on three figures: 112,000 tons, 380,000 tons, and 1,000,000 tons. He made no mention of the 16,840 or 22,340 ton figures which the IBLA later relied upon in its *de novo* review and redetermination without remand to the ALJ. Because the ALJ had already found Hjelvik's evidence to the larger figures speculative, he ignored those analyses, finding that "only [Border's] analysis as to the 112,000 short tons is pertinent." The ALJ then found that "[b]ecause of [Hjelvik's] greater consistency in [his] evidence and more reasonable approach to marketability, the testimony of Mr. Border is given greater credibility and weight than the collective testimony of [the government's] mineral examiner and the information he relied upon in forming his opinions upon marketability." "The venture," the ALJ concluded, "would be profitable both at the close of 1983 and in 1990."

Finally, in his litany of findings of fact, the ALJ made no mention at all of either the 16,840 or the 22,340 ton figure, but did find, inter alia, that:

(a) "The total inferred reserves in the area available to [Hjelvik] for milling in the amount of 112,000 short tons is of chromite mineral having a cut-off grade of 20 percent";

(b) "James A. Border, a Professional Engineer with excellent credentials as a mining engineer, was found to have greater credibility and his testimony was given greater weight in the areas of mining, milling and transportation than that accorded the witnesses for [the government]"; and

(c) "In the scenario envisioned by Mr. Border, the 112,000 tons of inferred ore would yield 70,562 tons of 40 percent chromite concentration after milling."

Were this Court to review the record *de novo*, I would have little difficulty finding for the claimants and upholding the deci-

sion of the ALJ. Sadly, we are bound by the standard of substantial evidence, and I must therefore honor the decision of the IBLA.