**COUNTY OF LOS ANGELES, SERVICE DELIVERY AREA, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 87–7461.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided Dec. 4, 1989.

Alvin S. Kaufer, Nossaman, Guthner, Knox & Elliott, Los Angeles, Cal., for petitioner.

Darryl A. Stewart, U.S. Dept. of Labor, Washington, D.C., for respondent.

Charlton G. Holland, Asst. Atty. Gen., San Francisco, Cal., for amicus curiae State of Cal.

Before ALARCON, BRUNETTI and THOMPSON, Circuit Judges.

BRUNETTI, Circuit Judge:

This is a petition for review of an order of the Secretary of Labor (SoL) dismissing the Los Angeles Service Delivery Area's (County) complaint and denying the County's request to intervene as a matter of right in a state administrative proceeding.

We affirm the SoL's decision in part. We agree that the County does not have a right to a hearing under 29 U.S.C. § 1576(a). We have concluded, however, the SoL erred in ruling that the County, pursuant to 29 C.F.R. § 18.10(b) (1988), did not have the right to intervene in the State's Department of Labor (DoL) proceeding. We therefore remand the case to the SoL for further proceedings.

*Background*

The case involves the results of an audit conducted by the State of California (State) regarding the use and expenditure by the County of funds administered under the Job Training Partnership Act (JTPA). *See* 29 U.S.C. §§ 1501–1781. In 1984, the State conducted an audit of the County's JTPA program. The audit covered the time period of October 1, 1983 through March 31, 1984. The State made findings in which it disallowed $3,130,502 in JTPA costs incurred by the County.

Pursuant to 29 U.S.C. § 1554(a), the County requested a state hearing with regard to the State's determination to disallow certain JTPA costs. Prior to the receipt of evidence, the State and the County entered into a settlement agreement.

Under the terms of the settlement agreement, the County was not liable for repayment of any of the disallowed costs. The State agreed to allow costs of $463,852, to accept standin costs[1] of $811,484 and to seek a waiver of repayment from the Department of Labor (DoL) for the remainder of the disallowed costs ($1,855,166).

Pursuant to the agreement, the County agreed not to contest any finding in which the DoL agreed with the State's determination to accept stand-in costs or to waive liability for the disallowed costs. The County reserved the right to reopen and contest all disallowed costs in which the DoL disagreed with the State's determination to waive liability or to accept stand-in costs. On May 12, 1986 the State requested the waiver from the DoL and requested that stand-in costs be permitted for other disallowed costs incurred by the County.

On November 7, 1986, in his final determination, the grant officer of the DoL agreed to allow the costs of $463,852 and to accept the State's determination to waive liability for $1,855,166 in disallowed costs incurred by the County. However, the grant officer also found that the County "made a conscious decision to supplant its funds with federal funds as a result of a desire or need to reduce general relief expenditures ... constitut[ing] wilful disregard of the [JTPA]." Because of the County's willful behavior, the grant officer did not concur with the State's determination to accept stand-in costs and did not accept stand-in costs totaling $773,386. The grant officer also disallowed $774,936 in costs representing overbilling by certain County service providers which had not been previously disallowed by the State. In sum, the grant officer disallowed $3,403,488 of which $774,936 had not previously been disallowed by the State and, in rejecting stand-in costs of $773,386, the grant officer determined that the State was liable for repayment of $1,548,322 in disallowed JTPA costs.

After the grant officer's final determination, both the State and the County sought to appeal the determination to the DoL office of the Administrative Law Judge (ALJ). 29 U.S.C. § 1576(a). The grant officer moved to dismiss the County's appeal arguing that pursuant to section 1576(a), the ALJ had no jurisdiction over the County. The State and County did not oppose the motion to dismiss the County's appeal as long as the County was allowed to intervene, pursuant to 29 C.F.R. 18.10(b), as a party in the State's appeal. On August 10,

---

1. Stand-in costs permit the State or County to offset such amounts against future JTPA grants.

1987, the ALJ granted the grant officer's motion to dismiss the County's appeal, denied the County's motion to intervene, and ruled that the County could participate as an amicus curiae in the State's administrative appeal.

Pursuant to 29 U.S.C. § 1576(b), the County filed a timely exception to this ruling with the Secretary of Labor. The Secretary took no action and the decision of the ALJ became the final decision of the Secretary on October 1, 1987. Pursuant to 29 U.S.C. § 1578(a), the County filed a petition for review with this court contesting the Secretary's order dismissing its complaint and denying it the right to intervene as a party in the State's administrative appeal. The State participated as amicus curiae in the County's appeal. All further proceedings in this case have been stayed pending resolution of the County's petition.

## Discussion

### I. Direct Appeal 29 U.S.C. § 1576(a)

■ The DoL asserts that its imposition of sanctions and attempted recovery of funds is directed solely against the State and not the County. Thus, the County has no right to a hearing under section 1576(a). Section 1576(a) provides in pertinent part:

Whenever any applicant for financial assistance under this chapter is dissatisfied because the Secretary has made a determination not to award financial assistance in whole or in part to such applicant, the applicant may request a hearing before an administrative law judge of the Department of Labor. *A similar hearing may also be requested by any recipient upon whom a corrective action or a sanction has been imposed by the Secretary.* Except to the extent provided for in section 1577 of this title, all other disputes arising under this chapter shall be adjudicated under grievance procedures established by the recipient or under applicable law other than this chapter.

29 U.S.C. § 1576(a) (emphasis added).

Both parties agree that the grant officer's final determination does not involve

an order by the Secretary not to award financial assistance to an applicant and does not fall within the language of the first sentence of section 1576. Accordingly, the County attempts to align itself with the language in section 1576(a) which permits "any recipient" upon whom a sanction has been imposed to request a hearing.

First, the County argues it is a "recipient" within section 1576(a) and therefore may request a hearing. The term recipient and subrecipient are not defined in the statute. The County contends the term "recipient" includes both recipients and subrecipients since both are required to make payments imposed by the Secretary; the recipient or State in this case must repay the DoL and the County must repay the State. *See* 20 C.F.R. § 629.44(d)(1) (1988).

The resolution of whether or not the County is a recipient is not necessary in this case. Even assuming that the County is a "recipient" within section 1576(a), the County must have been sanctioned by the Secretary to be entitled to a hearing.[2] Acknowledging that the sanctions were directed at the State, the County argues that imposition of the sanctions on the State is an indirect method of imposing sanctions on the County; the JTPA and the implementing regulations require the State to take aggressive debt collection action against a subrecipient in the event that a subrecipient has misspent JTPA funds. *See* 20 C.F.R. §§ 629.44(d)(2), 629.44(d)(3) (1988) (the governor shall take prompt and appropriate corrective actions for misexpenditures by a subrecipient); *see* S.Rep. No. 469, 97th Cong., 2d Sess. 27, *reprinted in* 1982 U.S.Code Cong. & Admin. News, 2636, 2662 (for "a misexpenditure of funds due to willful disregard of the requirements of the Act [or] gross negligence", the "recipient and subrecipient is [sic] liable for the repayment of funds from other than funds received under the Act"). Accordingly, even though the DoL directed its imposition of sanctions and request for re-

---

**2.** The State contends that the County does not have an independent right of review under sec-

tion 1576(a) because the State has been sanctioned—not the County.

payment to the State, the County argues it is liable for repayment of the funds and should have a right to a hearing under section 1576.

We disagree. The sanction and requested reimbursement was directed at the State. The Secretary could have imposed liability directly upon the County but did not do so. *See* 29 U.S.C. § 1574(e)(3). Under section 1576(a), only a recipient upon whom a corrective action or sanction has been imposed is entitled to a hearing. Since the County has not been sanctioned, only the State is entitled to a hearing under section 1576.

## II. *Right to Intervene 29 C.F.R. § 18.10*

Pursuant to 29 C.F.R. § 18.10 (1988), the County contends that it has met the requirements of the regulation and therefore it has a right to intervene in the State's administrative appeal. Section 18.10(b) states: "Other persons or organizations shall have the right to participate as parties if the administrative law judge determines that the final decision could directly and adversely affect them or the class they represent, and if they may contribute materially to the disposition of the proceedings and their interest is not adequately represented by existing parties." 29 C.F.R. § 18.10(b) (1988).

■ We review the ALJ's denial of the County's right to intervene de novo. The issue of whether the ALJ properly decided the County had no right to intervene is a question of regulatory interpretation. The County does not contest the validity of the regulation but contends the ALJ misapplied it. "Interpretation of an administrative rule is a question of law which we review de novo." *Lara v. Secretary of Interior of United States*, 820 F.2d 1535, 1538 (9th Cir.1987) (citation omitted). However, great deference is given to the interpretation of the department which created the rule. *Id.* (citation omitted). (The DoL promulgated the regulation in question.)

Before determining whether the County meets the three requirements set forth in section 18.10(b), we address the State's claim that section 18.10 does not apply to

this case. The ALJ's order of dismissal found that section 18.10 was inapplicable because it was inconsistent with 29 U.S.C. section 1576. We disagree with the order of dismissal and find the two rules are not inconsistent.

■ Section 1576 "establishes the administrative procedures for review not only of 'a corrective action or a sanction ... imposed [on a "recipient" of funds] by the Secretary,' but also of 'a determination not to award financial assistance' to 'any applicant for financial assistance.'" *Tenn. Dept. of Emp. Sec. v. Secretary of Labor*, 801 F.2d 170, 174 (6th Cir.1986). Section 18.10 sets forth the requirements for an affected party to intervene as of right in an administrative proceeding. Nothing in the language of section 1576(a) leads us to believe that it is intended to restrict affected parties from intervention. We do not find these two rules inconsistent, and therefore find that section 18.10 is applicable to this case.

### A. *A Final Decision Could Directly/Adversely Affect the County*

■ In its final determination, the grant officer found that the County wilfully disregarded the requirements of the act making stand-in costs inappropriate. According to the ALJ, the grant officer's "wilful disregard" finding only affects the manner in which the grant officer determined that the State must repay the disallowed costs to the DoL; therefore, the issue is between the State and the grant officer and does not affect the County.

It is true that the manner of repayment by the State to the DoL has been affected by the grant officer's wilful disregard finding—the DoL will not accept stand-in costs. As the County points out, however, the "wilful disregard" finding also affects how the County will have to repay the State. Pursuant to regulation 629.44, the Secretary holds the governor responsible for all misspent JTPA funds and, in turn, the governor must hold the subgrantee responsible for all misspent funds. 20 C.F.R. § 629.44(d)(1) (1988). Furthermore, the

governor must institute prompt and aggressive debt collection action to recover any funds misspent. 20 C.F.R. § 629.44(d)(2) (1988); *see id.* § 624.44(d)(4) (provides that the Secretary may permit the governor to forgo collection if the subgrantee is not at fault) and California Unemployment Insurance Code § 15029.5(b) (state may pass on federal fiscal sanctions to the subgrantee).

The County will be directly and adversely affected by the State's appeal: the State will seek repayment from the County for funds that the DoL concludes have been misspent by the County. Accordingly, the County has met the first requirement of section 18.10.

**B.** *The County Will Contribute Materially to the Disposition of the Proceeding*

According to the ALJ the joinder of the County as a party will not contribute to the disposition of the State's appeal. The County contends, however, that virtually all the testimony and evidence will be from the County's records and employees including expenditures by the County and underlying contracts administered by the County. The County has an advantage in presenting the evidence since the County and not the State has been involved in the various transactions. Furthermore, the Secretary's finding that the County wilfully disregarded the Act, determinative of whether the stand-in costs will be permitted, is based on County actions; therefore, the County's participation will materially aid in the presentation of evidence concerning the questioned expenditures. The County has met the second requirement of section 18.10.

**C.** *Interest of the County will not be Adequately Protected*

Because the State is independently liable for the County's misspent JTPA funds, the ALJ ruled that the State will adequately protect the interests of the County.

According to the County, the State will not adequately protect its interest because (1) the State will be forced to assert a position inconsistent with the position it must assert in subsequent actions against the County, and (2) in theory the State has nothing to lose since it can proceed against the County for any misspent funds. By cooperating with the state, the County would be admitting facts or providing testimony that could be used against it by the state in later proceedings in which the State seeks to collect the misspent funds from the County. This represents a direct conflict of interest between the County and the State which prohibits the County from having its case properly presented by the state.

Because the State will seek repayment from the County for funds determined by the SoL to have been misspent by the County the County should be afforded the opportunity to represent itself free from the conflict of interest with the state.

The County has met the requirements for participation in the State DoL proceeding pursuant to 29 C.F.R. § 18.10(b) (1988) and should be permitted to intervene as a party in the State's appeal.

*Conclusion*

We deny the County's petition for review with regard to the SoL's finding that the County does not have a right to a section 1576(a) hearing. However, we find that the SoL's interpretation of regulation 18.10 was erroneous. We therefore grant the petition for review in so far as it concerns the County's right to intervene under that section. Finally, we remand this case to SoL with instructions to permit the County to intervene in the State's DoL procedures.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.